## FOGARTY v. FINLAY et als.

Where the condition of the bond of a notary public is, that he will "well and truly perform and discharge the duties of a notary public, according to law:" *Held*, that this clause embraces every act which he is authorized or required by law to do in virtue of his office.

Where a notary public in taking and certifying an acknowledgment to a mortgage, neglected to state in his certificate that the party acknowledging the same was known to him, or was identified by the testimony of a witness examined by him for that purpose: *Held*, that such notary was guilty of gross and culpable negligence, and is responsible to the party injured for the damages resulting from such negligence.

The purpose of a certificate of acknowledgment is, to entitle the deed to be recorded, and to be admitted in evidence, without further proof. Such a certificate is utterly worthless, for either purpose.

Such neglect on the part of the notary is not excused by the fact that the certificate (which was a printed one, with blanks,) had been partially filled by the attorney of the grantee.

If the notary read the certificate before signing it, the omission must have been known to him; if he did not read it, he is equally guilty of negligence.

A notary holds himself out to the world as a person competent to perform the business connected with his office. By accepting the office, and entering upon the discharge of the duties, he contracts with those who employ him that he will perform such duty with integrity, diligence, and skill.

A party employing a notary is not obliged to determine upon the validity or legality of his acts.

Where a mortgaged debt has been lost by such negligence of the notary, the measure of damages is the amount of the debt and interest to be secured by the mortgage.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

This was an action on the official bond of Joseph W. Finlay, as notary public, for damages resulting from a neglect to state in his certificate of acknowledgment to a mortgage, that the mortgagor was personally known to him, etc., or was proven to be the same person by a competent witness.

The case was tried before a jury, who, under the directions of the Court, returned a special verdict. The Court below, after finding certain facts, found, as a conclusion of law from such facts: "That the plaintiff is not entitled to recover more in this case than the costs of the certificate, and no proof of that being made, and the plaintiff not desiring a judgment for that, and no new certificate having been executed, the defendants are entitled to a judgment." Judgment was accordingly entered for defendants, and plaintiff appealed to this Court.

The other facts in the case, necessary to explain the decision of the Court, appear in the opinion.

*Hoge & Wilson* for Appellant.

For the powers and duties of notaries public, see Comp. Stat., 902, § 6.

For form and requisites of certificates of acknowledgment, see Comp. Stat., 513–14.

It must be conceded that there was a neglect of duty and a breach of the bond.

Was the Court below correct in limiting the damages of the plaintiff to the cost of the certificate? The Compiled Statutes, p. 903, § 11, provides, that "for any misconduct or neglect of duty, etc., he [the notary] shall be liable on his official bond to the party injured thereby for all damages sustained." See, also, Ibid, p. 98, § 9.

This is about equivalent to the general rule of damages as laid down in the text-books.

"All damages must be the result of the injury complained of, etc. * * Those which necessarily result are termed general damages, being shown under the *ad damnum*, etc. * * Where the damages, though the natural consequence of the act complained of, are not the necessary result of it, they are termed special damages, which the law does not imply, and therefore, in order to prevent a surprise on the defendant, they must be particularly specific in the declaration, or the plaintiff will not be permitted to give evidence of them on the trial; and where the special damages are properly alleged, and are the natural consequences of the wrongful act, the jury may infer it from the principal fact." 2 Greenl. Ev., §§ 253–4.

"The natural results of a wrongful act are understood to include all the damage to the plaintiff of which such act was the efficient cause, though in point of time the damage did not occur until some time after the act done." 2 Greenl. Ev., § 268*a*, p. 275; see, also, §§ 256–265.

Sedgwick on Damages lays down about the same rule, and says, on p. 66: "But it is far easier to lay down a general proposition than to apply it to a particular case," etc.

Is there any more specific rule or measure of damages applicable to this case? What did Finlay do? He committed, *first*, a breach of an implied contract—a breach of duty as a public officer; *second*, an act of negligence amounting to a tort.

Each of these constitutes a breach of his bond, which was conditioned that he should "well and truly perform and discharge the duties of a notary public according to law." In arriving at the rule of damages, in reference to this act of Finlay, let us leave out of view, for the present, any act or omission of Fogarty which might be relied on as affecting his right of recovery or the measure of damages.

1. The act of the notary regarded as a breach of contract.

"The last class of contracts, implied by reason and construction of law, arises upon this supposition: that every one who undertakes any office, employment, trust, or duty, contracts with those who employ or entrust him, to perform it with integrity,

diligence, and skill." 3 Black. Com., 165; Addison on Con., 210, 211.

The sole object of Finlay's action in reference to this mortgage was to procure from him a proper certificate of acknowledgment, to enable Fogarty to record it, and thus obtain a priority of lien on the lot. To be sure, the statute permits a deed, properly acknowledged and certified, to be read in evidence without further proof of its execution; but not only that, but the fitness of this mortgage for the records, and the effect of that record on the rights of Fogarty, were the very things in the minds and contemplation of Finlay and Fogarty at the time the certificate was given.

Sedgwick on Damages, p. 112, after a review of all the cases, lays down the general rule, where the contract is to do or not to do a particular thing, as follows: "The party in default shall be held liable for all losses that may fairly be considered as having been in the contemplation of the parties at the time the agreement was entered into. Or, in other words, where it appears, or may fairly be inferred, that the party complaining of the non-performance of a contract has, at the time it was entered into, turned the mind of the party whose conduct is complained of, to the consequences likely to ensue from a default on his part, and such consequences do ensue, he shall be held responsible for them as having stipulated against them."

Must not an officer, acting under his oath of office and bond, be supposed to understand thoroughly the duties, objects, and responsibilities of his office, and to at all times know and contemplate the result of a violation of his duties?

A contract in reference to the fitness of a thing for a particular purpose, makes the contractor liable if it fail to accomplish that object. Sedg. on Dam., 59.

So, if parties contract with reference to a law, the law itself becomes part of the contract, and they are bound thereby. Matoon v. Eder et al., 6 Cal., 57.

The case is very similar to Varnum et al. v. Martin, 15 Pick., 440–2. The action was against an attorney for negligence, carelessness, and want of skill. In taking out a writ of attachment, he omitted to fill up a blank in the writ. The Court held that "in a case like this, where care was required, it was the duty of the attorney to read over the writ, and see that it was correct." He was held responsible for the whole debt. Vide, also, Brown, Gov'r, v. Lester, 13 S. & M., 392; McNutt, Gov'r, v. Livingston et al., 7 S. & M. 641.

*S. Asbury Sheppard and Cyril v. Gray* for Respondents.

The appellant's counsel say the principal question is as to the measure of damages, and after citing the finding of the Court and the statutes relating to the duties and obligations of nota-

ries, and their liabilities on their bonds, cites also 2 Greenl. Ev., §§ 253, 254, 256, 261–265, and 268a, and Sedgwick on Damages, 66.

In reference to these citations, we say that they do not support the appellant's but that they do support the position taken by the respondents.

The doctrine laid down in all the citations is, that the damages which can be recovered in such an action as this, must be the necessary, natural, and proximate consequence of the act complained of.

Is the loss which the plaintiff sustained, either the necessary, natural, or proximate consequence of the defective certificate complained of?

It is not a necessary consequence, for the defective certificate did not invalidate the mortgage, nor depreciate, nor impair the security given by that instrument. The mortgage, as between Fogarty and Dupuy, was as valid with the defective certificate, as it would have been with a perfect one. It was not an unavoidable consequence of the defective certificate that Fogarty did not get his money. His mortgage was dated May 12, 1854, and was due November 12, 1854. The one which took precedence of his, was dated April 7, 1855. Fogarty, at any time between November 12, 1854, and April 7, 1855, might have enforced his mortgage against the property, notwithstanding the defective certificate. It was not, then, a necessary consequence of the defective certificate that he failed to enforce the mortgage.

The appellant cites three cases in support of the conclusion that the damage for which the notary must be held under this head, is the amount of the debt—none of which sustain the position taken.

The first of these cases is Varnum et al. v. Calvin Martin, 15 Pick., 440. The other cases cited are McNutt v. Livingston, 7 Smedes & Mar., 641, and Brown v. Lester, 13 Ibid., 392.

The first of these cases was a suit on the official bond of a clerk of a Circuit Court, for issuing a *supersedeas* on an appeal from a judgment, without taking a bond, as required by the statute, whereby the plaintiff lost his debt, the sheriff having levied on property more than sufficient to pay the debt, which levy he relinquished on receiving the *supersedeas*, and the judgment-debtor becoming insolvent, the plaintiff lost his debt.

The second was a suit against a clerk for omitting to docket a cause, whereby the plaintiff lost a term in obtaining judgment, and the debtor becoming insolvent in the meantime, the plaintiff lost his debt.

In both of these instances the plaintiffs recovered, and the reason why, is plain. The acts complained of were the direct, natural, and necessary cause of the loss.

The appellant's counsel next proceed to consider the negligence of the notary regarded as a *tort*.  And they cite Sedgwick on Damages, where he treats of suits against sheriffs and public officers for breach of duty; and the damages as being "the amount of the original debt due the plaintiff, or the value of the property which has been lost or prejudiced by the misconduct of the officer."

And here we may remark, that the breaches of duty or misconduct of the officers of which Sedgwick treats in this connection, are the " acts of public officers who are charged with the ministerial portion of the administration of justice."  Sedgwick on Damages, 506.

It can hardly be said that a notary is a public officer, charged with either the ministerial or any other " portion of the administration of justice."

We say, first, that a notarial certificate is not an act which affects, or impairs, or strengthens, a deed to which it may be attached;—its objects are two-fold—to enable a deed to be read in evidence without further proof of its execution; and to authorize the county recorder to place it on record, so as to affect with notice subsequent incumbrancers or purchasers.

If the certificate is incorrectly drawn, so as not to be effectual for either of these objects, no loss necessarily follows.

This is an action for damages by reason of negligence.  A plaintiff suing for negligence must be wholly without fault himself.  Rathburn v. Payne, 19 Wendell, 400; Rockwell v. Wilson, 5 Carr. and Payne, 375; Williams v. Holland, 6 Ibid., 23; Lock v. Seward, 4 Ibid., 106.

Where the injury of which plaintiff complains has resulted from the negligence of both parties, without any intentional wrong on the part of the defendant, the action can not be maintained.  Bunnell v. Flagler, 5 Hill, 283, and cases cited, note A; Hordern et al. v. Dalton, 1 Carr. and Payne, 181, (12 E. C. L., 132.)

When it appears that the defendants are free from gross neglect, and the plaintiff is guilty of great neglect on his part, (having unnecessarily, not to say designedly, filled out the certificate himself,) the injury must be considered a consequence of his own neglect, at least such neglect as the law must impute to him through others.  Hartfield v. Roper, 23 Wendell, 623, and cases cited.

When a plaintiff voluntarily aids to do the act complained of, he can not be allowed to make his own misconduct the foundation of a claim for redress.  Brown v. Maxwell, 6 Hill, 592; Sandford v. Handy, 23 Wendell, 259; Sage v. Sherman, 2 Comstock, 423.

The law gives only direct and immediate damages, not remote, speculative, and contingent damages.  See Sedgwick on Dam-

ages, 36, 77 ; Loker *v.* Damon, 17 Pickering, 284 ; Thompson *v.* Shattuck, 2 Metcalf, 615 ; Sexton *v.* Nevers, 20 Pickering, 451 ; Deyo *v.* Waggoner, 19 Johnson, 241 ; Flower *v.* Adams, 2 Taunton, 314 ; Davis *v.* Fish, 1 Iowa (Greene's) R., 409 ; Morse *v.* Adams, 2 Chitty, 198.

When the party injured can protect himself at a trifling expense, he must do so, or he can not recover the subsequent loss to which he subjects himself. Sedgwick on Damages, 94 ; Davis *v.* Fish, 1 Iowa (Greene's) R., 407 ; Miller *v.* Mariners' Church, 7 Greenleaf, 51 ; Shannon *v.* Comstock, 21 Wend., 459 ; Hecksher *v.* McCrea, 24 Wendell, 303 ; Blanchard *v.* Ely, 23 Ib., 342 ; Starkie on Ev., vol. 2, p. 741, title Nuisance ; Hordern *v.* Dalton, 1 Carr. and Payne, 181, (12 E. C. L., 113 ;) Allen *v.* Suydam, 20 Wendell, 321.

When the damage complained of is not the direct consequence of the act complained of, but the acts of other parties who are not sued have contributed to or occasioned it, the plaintiff can not recover. See Flower *v.* Adams, 2 Taunton, 314 ; Hargous *v.* Ablon, 3 Denio, 406 ; same case, 5 Hill, 472 ; Fitzsimmons *v.* Inglis, 5 Taunton, 534.

We say, then, the appellant is not without fault. He (or his attorney, which is the same thing) prepared the certificate.

TERRY, C. J., delivered the opinion of the Court—FIELD, J., concurring.

Plaintiff loaned to one Dupuy a sum of money, taking as security a mortgage on a lot in San Francisco. The mortgage was acknowledged by Dupuy, before defendant Finlay, who was a notary public for San Francisco county.

The mortgage used was an ordinary printed form, having a certificate of acknowledgment in blank, in which was inserted, in the hand-writing of one Sanders, who acted in the transaction as attorney for both mortgagor and mortgagee, the name of the mortgagor and the date of the acknowledgment. To this certificate the notary affixed his signature and seal, omitting to state either that the party acknowledging was known to him, or was identified by the testimony of a witness examined for that purpose.

In consequence of this omission, the record of mortgage was held not to impart notice to subsequent incumbrancers. (See Wolf *v.* Fogarty, 6 Cal., 224.) Plaintiff's lien was postponed in favor of a later mortgage, which exhausted the entire property, and Dupuy being insolvent, the debt was lost.

Plaintiff now seeks to recover, on the bond of the notary, the damage occasioned by the negligent and unskillful performance of an official act.

The condition of the bond executed by the defendants is, that Joseph W. Finlay should " well and truly perform and discharge

the duties of a notary public, according to law." This embraces every act which he is authorized or required by law to do in virtue of his office.

By the "Act concerning Notaries Public," each notary has power to take and certify the acknowledgment or proof of conveyances, and his certificate is made *prima facie* evidence of the facts therein set forth.

"For any misconduct or neglect of duty, in any of the cases in which any notary public, appointed under the authority of this State, is authorized to act," etc., "he shall be liable on his official bond to the parties injured thereby for all damages sustained." (Compiled Laws, 903.)

It is clear, that in this case defendant Finlay did not faithfully perform his duty, but was guilty of gross and culpable negligence, and he is responsible to the party injured for the damages resulting from this negligence.

The purpose of a certificate of acknowledgment is to entitle the deed to be recorded, and to be admitted in evidence without further proof. (Act concerning Conveyances, §§ 18 and 29.) The certificate furnished was utterly worthless, for either purpose.

This neglect is not excused by the fact that the certificate had been partially filled by the attorney for the grantee. The certificate, upon its face, is unfinished; the date and the name of the grantor had been inserted, leaving it for the notary to insert his knowledge or the evidence received of the identity of the party making the acknowledgment.

If the notary read the certificate before signing it, this omission must have been known to him; if he did not, he is equally guilty of negligence, for an officer who affixes his official signature and seal to a document (thereby giving to it the character of evidence,) without examining it to find whether the facts certified are true, can scarcely be said to faithfully perform his duty according to law.

It is said that the plaintiff, having received the conveyance from the notary, and retained the same some time in his possession, is charged with knowledge of the defect in the certificate, and, as the damage was the result of his own negligence in failing to correct the error of the notary when in his power, he is only entitled to recover the cost of the certificate.

This position we think erroneous. Finlay held himself out to the world as a person competent to perform the business connected with the office. By accepting the office, he contracted with those who might employ him that he would perform it with *integrity, diligence,* and *skill.* (3 Blackstone Com., 165.) He had given a bond to indemnify those who should suffer by the unfaithful or unskillful performance of his duty.

It is not shown that plaintiff was aware of the omission in the

certificate; but admitting he knew it, he was not obliged to determine upon the validity or legality of the act of the officer.

The statute gave him a remedy upon the bond of the officer for the damages sustained by the mal-performance of his duty, and he had the right to rely on this remedy.

Our conclusion, from the record, is, that the plaintiff is entitled to recover of defendants the damage caused by the act of the notary, and that the measure of damages is the amount of the debt and interest intended to be secured by the mortgage.

Judgment reversed and cause remanded, with directions that the Court below render a judgment in accordance with this opinion.