## Commonwealth, to use, &c., *versus* Haines.

1. The certificate of a notary of the acknowledgment of a deed or mortgage, like that of a judge or justice of the peace, is a judicial, not a ministerial, act.

2. Where an action is brought against a notary for a false certificate of acknowledgment, the presumption is that the defendant, acting in his judicial capacity, did so on reasonable information, and discharged his full duty. The burden of proof is on the plaintiff to prove a clear and intentional dereliction of duty.

3. A. forged B.'s name to a mortgage given to C., and, appearing before a notary, personated B., and acknowledged the instrument. The notary appended the usual certificate of acknowledgment, and C. thereupon paid over to A. the amount for which the pretended mortgage from B. was given. Subsequently, on discovering the fraud, C. sued the notary for having issued a false certificate of acknowledgment. On the trial C. showed that A. had personated B., and then called the defendant, who testified: "I do not know B. The paper was undoubtedly signed before me. I don't remember that

I did or did not take any precaution to identify the person making the acknowledgment, but I know I must have been satisfied at the time." *Held*, that, under these circumstances, a nonsuit was rightly awarded.

February 21st 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

*Error* to the *Court of Common Pleas, No. 2, of Philadelphia county*: Of January Term 1879, No. 259.

Debt on an official bond, by the Commonwealth, to the use of Stephen S. Price, against H. Clay Haines, Josiah Haines and Clayton Haines.

On the trial, before MITCHELL, J., the plaintiff's evidence showed the following facts: In February 1874, the defendant, H. Clay Haines, was duly appointed and commissioned a notary public of the Commonwealth of Pennsylvania, residing in the city of Philadelphia, for the term of three years. He gave bond to the Commonwealth in the usual form, with the other two defendants as sureties, in the sum of $10,000. The condition of the bond was as follows:

"Now the condition of the above obligation is such that if the said H. Clay Haines, appointed and commissioned notary public as aforesaid, shall and does well and truly and faithfully in all things execute and perform the duties of said office of notary public according to the several Acts of Assembly relating thereto, and shall well and faithfully account for, and pay over unto the state treasury all public moneys or taxes which he shall become liable to pay to the Commonwealth, or which shall come into his hands from time to time during his continuance in the said office; and also shall, when thereunto lawfully required, deliver up to the register records and other public papers to the said office belonging, whole, safe and undefaced, into the office of the recorder of deeds for the said county of Philadelphia, as required by law, then this obligation to be void, or else to be and remain in full force and virtue."

On April 30th 1875, the defendant, H. Clay Haines, acting as notary, gave the following certificate of acknowledgment, endorsed on an indenture of mortgage for $2800, purporting to have been executed by Abram P. Beecher to Thomas Clarke, dated April 30th 1875, of certain premises in the city of Philadelphia:

"On the 30th day of April, A. D. 1875, before me, the subscriber, a notary public of the Commonwealth of Pennsylvania, residing in the city of Philadelphia, personally appeared the above-named Abraham P. Beecher, and, in due form of law, acknowledged the above indenture of mortgage to be his act and deed, and desired the same might be recorded as such.

"Witness my hand and notarial seal the day and year aforesaid.
[OFFICIAL SEAL.]          "HENRY C. HAINES, Notary Public."

· [Commonwealth *v.* Haines.]

This mortgage was recorded May 1st 1875, and on May 13th 1875, the same was purchased by Edward S. Harlan, Esq., attorney for Stephen B. Price, the plaintiff, from F. B. Vogel, Esq., attorney for Thomas Clarke, the person named as mortgagee. At the time of said purchase, the bond and mortgage, together with the certificate of no set-off, brief of title, searches, policy of insurance of premises, &c., were presented to Mr. Harlan, who had been authorized by Mr. Price to pay therefor, on being satisfied that the mortgage was a valid second mortgage. He examined them, and without notice or suspicion of any forgery having been committed, found them to be correct. Mr. Harlan ascertained that A. P. Beecher owned the premises, but no inquiry was made of Beecher himself, who lived in Wilmington, Del. On the same day Mr. Harlan paid for said bond and mortgage thus assigned by Clarke to said Price the sum of $2589.

The plaintiff proved that the signature of Abram P. Beecher to the said mortgage was a forgery; that Mr. Beecher had not appeared before the defendant and acknowledged the said mortgage on April 30th 1875, or at any other time; and that Mr. Beecher had no knowledge of this mortgage until May 1876, a short time prior to the trial of Clarke in the Quarter Sessions for forgery, when he was notified that Clarke had been arrested and that the mortgage in his name was supposed to be a forgery.

The plaintiff called the defendant for cross-examination, who testified as follows (mortgage shown witness) :

"The signature and notarial seal to the acknowledgment to this paper are mine. At the time of putting my hand and seal to this acknowledgment I didn't know Abram P. Beecher. I never remember seeing him before I saw him when the deposition was taken. Before taking this acknowledgment I never had seen or heard of Abram P. Beecher. I do not remember whether I knew the man who made the acknowledgment. I have no knowledge of this matter, except what appears on the acknowledgment. Very frequently some one whom I know brings in the person and introduces them. I was satisfied at the time I took the acknowledgment that it was all right. I do not remember what took place before me. The paper was undoubtedly signed before me. I don't remember that I did or did not take any precaution to identify the person making the acknowledgment, but I know I must have been satisfied at the time."

At the close of the plaintiff's case the Court, on motion of defendants, granted a non-suit, which the court in banc, after argument, refused to take off. The plaintiff thereupon took this writ of error, assigning for error the said action of the court.

*John G. Johnson,* for the plaintiff in error.—The question of the liability of notaries public and their sureties for damages caused

[Commonwealth *v.* Haines.]

by false certificates of acknowledgment is of public importance. Notaries are invested by the state authority with high privileges, and should be held to correlative duties. A notarial certificate, by law and general usage, is entitled to faith and credit, and it is the notary's duty to use care corresponding to the import of his certificate. For this service he receives compensation, and if by his gross negligence or absence of due care he certifies to a falsehood, any one relying on it and suffering damage may be indemnified out of the bond. The defendant's negligence in this case is admitted by his own testimony. It is true he swears that " he knows he must have been satisfied at the time that it was all right." But the question is whether he *ought* to have been satisfied ; and he alleges no fact showing diligence, but admits that he does not remember having taken any precaution to identify the party. A notary is not bound to warrant absolute truth, but where his certificate is shown to be false, he ought to show reasonable skill and diligence. It is not enough to show absence of fraud or guilty knowledge : Whart. on Negligence, 2d ed., sect. 284 ; Shearman and Redfield on Negligence, ed. 1874, sects. 163–168. There was evidence of negligence, and the case should, therefore, have been submitted to the jury.

It is said the act of the notary in taking the acknowledgment is a " judicial act." But where the grantor does not appear before him, he acts without jurisdiction, and like all inferior tribunals acting without jurisdiction, he is not protected. The mere giving of a certificate, without taking testimony, is a ministerial act, and even a judicial officer, in the exercise of ministerial functions, is not protected by judicial privilege : Shearman and Redfield on Negligence, sect. 161. The notarial bond, unlike the bonds of magistrates or judges, is conditioned for the faithful performance of official duties.

*R. C. McMurtrie* (*Joseph M. Pile* with him), for the defendants in error.—The argument of the other side, *ab inconvenienti*, cannot well be exaggerated, but it is a cry to the legislature—this court cannot legislate to cure the evils under our acknowledging and recording acts, which, it must be admitted, are appalling. Theoretically the acknowledgment of deeds before judges, magistrates, commissioners or notaries public is, or was intended to be, a formal judicial act, as a pre-requisite to recording. In its nature the act is judicial in a high degree, to take, certify and attest under an official seal an *ex parte* proceeding. The recorder was intended to be a judicial officer to decide whether an instrument was properly recordable to become notice. And a certified copy of the record is made evidence equal to the original. In practice, notaries have been known to certify to acknowledgments of parties who are strangers to them, and the recorder will record anything.

[Commonwealth *v.* Haines.]

Yet, practically, as well as theoretically, the legislature has authorized the copy of a copy to be equal to the original, and the party offering it cannot be called on to substantiate the genuineness of the original, even when the whole question is one of forgery.

It is well settled that the taking and certifying an acknowledgment by a notary public, as well as by other authorized officers, is a judicial act, for which the officer is not responsible in damages except for fraud, known omission, or intentional wrong. The legal presumption is in favor of honesty and regularity, and as there was no evidence to rebut this presumption, the court was right in entering a nonsuit: Jamison *v.* Jamison, 3 Whart. 457; Withers *v.* Baird, 7 Watts 227; Hornbeck *v.* Building Association, 7 Norris 64; Lloyd *v.* McGarr, 3 Barr 474; Share *v.* Anderson, 7 S. & R. 43; Hamsher *v.* Kline, 7 P. F. Smith 397; Watson *v.* Bailey, 1 Binn. 470; Barnet *v.* Barnet, 15 S. & R. 72.

As an invester it was Price's duty to inquire of the mortgagor, and omitting so to do, he is remitted to his remedy against 'those with whom he dealt in the transaction.

Mr. Justice MERCUR delivered the opinion of the court, May 2d 1881.

This action was against a notary public and his sureties on his official bond. The complaint is that he certified to one Abram P. Beecher having personally appeared before him and in due form of law acknowledged a certain indenture of mortgage to be his act and deed, when in fact the person who appeared before him and made the acknowledgment was not Abram P. Beecher, whereby said plaintiff was injured.

The plaintiff called Abram P. Beecher, who owned the lot described in the mortgage on which the notary made the certificate. He testified that this mortgage was not executed by him, nor by his authority, and that he never made any acknowledgment thereof, or of any mortgage on that property, before the notary, or before any person. The plaintiff testified that, relying on the supposed validity of the mortgage and the record thereof, he bought and paid for the mortgage.

The question to be considered is, What proof is necessary to make the notary legally liable to one injured by the making of such certificate untrue in fact?

It is well settled that the certificate of a judge, or a justice of the peace, of the acknowledgment of a deed or mortgage is a judicial act: Withers *v.* Baird, 7 Watts 227; Jamison *v.* Jamison, 3 Whart. 457; Heeter *v.* Glasgow, 29 P. F. Smith 79; Singer Manufacturing Co. *v.* Rook, 3 Norris 442.

Conceding such to be the effect of a certificate of a judge or justice, yet it was contended on the argument that like effect should not be given to the certificate of a notary. Why not? He

[Commonwealth *v.* Haines.]

is a public officer commissioned by the governor. He is acting under oath, like other officials in the performance of judicial duties, to "well and faithfully perform the duties of his office." The second section of the Act of 10th August 1864, Purd. Dig. 1097, expressly gives power to "each notary public of this Commonwealth," inter alia, "to take and receive the acknowledgment or proof of all deeds, conveyances, mortgages, or other instruments of writing, touching or concerning any lands, tenements or hereditaments situate, lying and being in any part of this state, * * * as fully, to all intents and purposes whatsoever, as any judge of the Supreme Court, or president or associate judge of any of the Courts of Common Pleas, or any alderman or justice of the peace within this Commonwealth." As, then, a notary is authorized to take the acknowledgment as fully, to all intents and purposes, as a magistrate can do, it follows the same effect should be given to his certificate of acknowledgment. It was so held in Hornbeck *v.* Building Assoc., 7 Norris 64. Whatever officer is authorized to take the acknowledgment, to him is given a judicial duty, and when he performs it it becomes a judicial act, and has the effect of a record.

This action, then, is to recover damages flowing from the incorrect manner in which the defendant performed an official act. The rule as to the liability of an officer performing a ministerial duty does not apply.

The plaintiff also called and examined the defendant notary. He testified that at the time of putting his hand and seal to the acknowledgment he did not know Abram P. Beecher, did not remember that he had ever seen or heard of him before; had no knowledge of the matter, except what appears on the acknowledgment; frequently some one whom he knew brought in the person and introduced him; he was satisfied at the time it was all right, but does not remember what took place. He added, "the paper was undoubtedly signed before me. I don't remember that I did or did not take any precaution to identify the person making the acknowledgment, but I know I must have been satisfied at the time." The substance of his evidence therefore is that while he does not recollect what inquiries or statements were made, yet he knows he must have been satisfied as to the identity of the person, and that it was all right at the time the acknowledgment was taken. No evidence was given conflicting with or impairing this evidence of the defendant. The legal presumption is he acted on reasonable information, and did his full duty. His absence of memory as to the details of what occurred does not destroy that presumption. The burden of proof is on the plaintiff to prove a clear and intentional dereliction of duty. This is neither proved nor averred. A mere mistaken conclusion imposes no legal liability on the defendant. The learned judge was clearly right in ordering a compulsory nonsuit and in refusing to take it off. Judgment affirmed.