## Com. ex rel. Russell v. The Fidelity and Casualty Co. of N. Y. et al.

*James P. Costello, Jr.,* for plaintiff; *Maxwell & Blewett,* for defendants.

LEWIS, J., June 28, 1932.—This is an action against a notary public and her surety for an alleged default under the conditions of the bond given to the Commonwealth (pursuant to section eight of the Act of March 5, 1791, 3 Sm. Laws 6) to "well and truly and faithfully in all things execute and perform the duties of said office of notary public according to the several acts of assembly relating thereto."

The complaint in substance is that Marie A. Gorman, a notary, certified to an acknowledgment of a forged assignment of certificate of title covering Russell's motor vehicle, purporting to have been executed by Russell. This act of the notary, it is asserted, resulted in Russell's loss of his automobile, of the value of $1000.

The record discloses that service of process was not made upon Marie A. Gorman, and action accordingly proceeded against the surety alone. This was not improper in the light of the provisions of the Act of June 29, 1923, P. L. 981: C. V. Hill & Co. *v.* Marriner et al., 86 Pa. Superior Ct. 545, 548.

The basic questions of law presented for determination are:

Did the testimony adduced on behalf of Russell sufficiently disclose such negligence or dereliction of duty on the part of the notary as would warrant a recovery against the surety on her official bond?

Was the act of the notary the proximate cause of Russell's loss?

The forged assignment was dated March 26, 1929. From Russell's own testimony, it appears that on March 20, 1929, he entered into negotiations for the sale of his automobile, through an agent, one Grow, a Philadelphia automobile dealer, to Henry C. Bassett, with whom Russell was unacquainted. The automobile was a new, unregistered Gardner roadster, which at the time bore Russell's license plates as dealer. Grow called at Russell's place of business in Hazelton, Pa., on March 20, 1929, and Russell delivered to him the automobile and his own license tags, then on the car, in return for which he received from Grow a written memorandum to the effect that Grow would pay Russell the purchase price of the automobile upon receipt thereof from Bassett, the proposed purchaser. Russell at the same time executed an application for certificate of title to be issued to Henry C. Bassett and an assignment of certificate of title, which he delivered to Grow. Russell apparently had no prior dealings with Grow and had no personal contact with Bassett in connection with the proposed sale of his automobile. He testified that the signatures to the assignment, under which title was transferred to the United States Motors Finance Company, and to the application for certificate of title, were not his, and that he had at no time appeared before Marie A. Gorman and acknowledged either of these documents. After he learned of the fraud which had been perpetrated, Russell tried, unsuccessfully, to regain possession of his automobile.

A notary public has been defined as "a public officer whose function it is to attest and certify, by his hand and official seal, certain classes of documents, in order to give them credit and authenticity in foreign jurisdictions; to take acknowledgment of deeds and other conveyances, and certify the same; and to perform certain official acts," the power to do which is conferred by statutory enactment: 46 C. J. 501, Sec. 1.

There is a marked divergence of opinion among the authorities of the various jurisdictions on the question whether a notary in taking an acknowledgment acts in a ministerial or judicial capacity. In the jurisdictions where the former view prevails, a notary is said to be liable for a negligent performance of duty resulting in injury, while in those states where the acts of a notary are regarded as of a judicial character, the courts have held that the notary is not liable for a mere negligent performance of duty, and have applied the rule of liability applicable to the acts of a judicial officer. For a full review of the divergent doctrines and the authorities in support of each, see 20 R. C. L. 335, Sec. 17, and 46 C. J. 528.

In the determination of the first basic question involved in this case, we are constrained to adopt the opinion of Mr. Justice Mercur in Com., to use, *v.* Haines, 97 Pa. 228, wherein he determines that the act of a notary public in taking an

acknowledgment is in the same category as a similar act by a judge or a justice of the peace, that the duty of the notary is a judicial one and "the rule as to the liability of an officer performing a ministerial duty does not apply."

The proof of identity upon which an officer certifying an acknowledgment is justified in acting is treated in the annotation to Anderson *v.* Aronsohn et al., 181 Cal. 294, 184 Pac. 12, reported and annotated in 10 A. L. R. 866. A notary who affixes his official signature and seal to an acknowledgment, without examining to ascertain whether the facts recited are true, is negligent, but a mere mistaken conclusion as to the identity of the signer imposes no legal liability on the notary. If, however, he takes the acknowledgment of an imposter who is not personally known to him, relying on an introduction by a third person instead of exacting a proper oath of identification, he and his surety may be held responsible for loss: 1 R. C. L. 310, Sec. 106; 1 C. J. 902, Sec. 294. An officer performing a judicial act, however, is not liable for mere inadvertence or a negligent mistake made without corrupt motive or wanton disregard of duty.

"In an action against an officer for making a false or defective certificate of acknowledgment the legal presumption is that the defendant did his full duty, and the plaintiff in order to recover must assume the burden of overcoming this inference:" 1 R. C. L. 311, Sec. 110.

The degree of care which a notary is bound to exercise in satisfying himself of the identity of a person applying to him to take an acknowledgment is that which an ordinarily careful and prudent business man would use in his own affairs: Howcott *v.* Talen et al., 133 La. 845, reported and annotated in 49 L. R. A. (N. S.) 45.

The burden of proof of such negligence rests upon Russell, who must overcome the presumption that the notary acted on reasonable information and did her full duty. In order to recover, a clear and intentional dereliction of duty and want of care on the part of the officer taking the acknowledgment must be shown: Com. *v.* Haines, supra.

Was there any proof here justifying an inference or conclusion that the notary acknowledged the instrument in question without due and proper precaution or with any corrupt or wanton intention? It seems to the trial judge, who heard this case without a jury, that the evidence produced is clearly wanting in this regard. There is nothing in the testimony to rebut the presumption in favor of honesty and regularity so far as the act of the notary is concerned. Russell's statement that he did not sign the instrument, we think, is insufficient.

Considering the other and perhaps more significant question before us, it is established, beyond question, that an officer who takes an acknowledgment "is not liable where some other agency or condition, and not his act in making the false or defective certificate of acknowledgment, is the proximate cause of the damages. Accordingly, if negligence on the part of the plaintiff was the proximate cause of the loss there can be no recovery:" 1 R. C. L. 310.

Russell can recover on the bond only such amount of loss or damage as he can clearly trace to the notary's official act: Com., to use, *v.* Moskovitz et al., 12 Lacka. Jur. 246.

It is apparent from Russell's own version of the transaction that the acknowledgment to the assignment of the certificate of title was neither the direct nor proximate cause of his loss. He himself executed an assignment of title, which he forwarded to the authorities in Harrisburg, with the intention of having title transferred to the proposed purchaser. He delivered the automobile, for which no certificate of title or registration had previously been procured, together with his dealer's license tags, to Grow, and by his own act placed in

Grow's power the opportunity of perpetrating the fraud which occasioned his (Russell's) loss. It is not shown that anybody relied upon the false acknowledgment or upon the forged instrument, but it appears, on the other hand, that Russell's inability later to procure the return of his automobile was the direct result, not of any acknowledgment or certification, but of the faith, trust and confidence mistakenly reposed by him in an automobile dealer with whom he was slightly acquainted and in whose hands he placed the muniments of title and the means of committing the wrong. Had Russell not acted in a manner which justifies the conclusion that he was contributorily negligent, or had he retained possession of the automobile, there would have been no loss. The forged assignment of title conveyed no rights to the transferee therein designated. The certificate of the notary to the forged instrument or assignment of title to the automobile had no validity and could be contradicted.

In Smith v. Markland, 223 Pa. 605, Mr. Justice Brown, in considering the effect of a forged deed, said:

"The distinction, apparently overlooked between those cases and this one, is that here there was no appearance by the alleged grantor before the notary public and no acknowledgment at all by her. A decree of a court resulting from the fraud practiced upon Mrs. Smith would be a dead letter upon the exposure of it. 'In the eye of the law, fraud spoils everything it touches. The broad seal of the commonwealth is crumbled into dust, as against the interest designed to be defrauded. Every transaction of life between individuals in which it mingles is corrupted by its contagion. Why, then, should it find shelter in the decrees of courts? There is the last place on earth where it ought to find refuge. But it is not protected by record, judgment or decree; whenever and wherever it is detected, its disguises fall from around it, and the lurking spirit of mischief, as if touched by the spear of Ithuriel, stands exposed to the rebuke and condemnation of the law:' Mitchell v. Kintzer, 5 Pa. 216. The certificate of the notary in this case, procured by fraud, is nothing but cumulative evidence of the attempt of Skinner to steal Mrs. Smith's property, and the doctrine of the rights of a bona fide purchaser has no place in the controversy. There are no such rights when the real owner of property stolen, or attempted to be stolen, from him has done nothing to lead the purchaser of it to buy it under the belief that it was not stolen. Reliance on a forged deed, recorded on an absolutely false certificate of acknowledgment, may bring loss upon him who so relies, but neither such deed nor such certificate appended to it can ever affect the owner of the property. This is the rule that the learned court below should have unhesitatingly announced."

It nowhere appears that Russell's loss springs from the falsity of the acknowledgment to the assignment of title. Paraphrasing the expression of Newcomb, J., in Com., to use, v. Moskovitz et al., supra: "The true source of the loss lies back of the [assignment of title]. It was inherent in the transaction from the start. In itself, the false certificate was merely an incident, not the occasion, of the loss complained of."

Not even nominal damages can be recovered on the notary's bond, where, as in this case, the sole proximate cause of the loss was something entirely unrelated to the act of the officer.

The evidence does not show that loss has been sustained because of reliance on the false certificate: 1 C. J. 903.

The opinion of Stone, J., in Zitlow v. Chisholm, 175 Minn. 352, is quite apt, as the facts in that case bear a great similarity to those in the action before us. The plaintiff there left an automobile, title to which was registered in his name, with one Waldon for sale upon certain terms. Waldon sold and delivered the

machine to one Quigley by forgery of relator's signature on the short-form bill of sale endorsed on the registration card issued by the secretary of state, which was acknowledged by defendant notary. The court said: "The allegation in that connection that by means of the spurious bill of sale the ownership of the car 'was duly transferred' to Quigley, is a conclusion of law and ill-founded, for no title is conveyed by a forged instrument."

The relator's loss is not directly chargeable to any act of omission or commission on the part of the notary.

Russell's own testimony convicts him of contributory negligence, which, in addition to the other substantive reasons discussed, precludes recovery.

We are accordingly constrained to find in favor of the defendant, the Fidelity and Casualty Company of New York.