[Civ. No. 2929.   Second Appellate District, Division Two.—July 29, 1919.]

GEORGE W. BROWN, Appellant, v. E. E. RIVES et al., Respondents.

[1] NOTARY PUBLIC—FORGED DEED—USE OF ASSUMED NAME—ACKNOWLEDGMENT—LIABILITY FOR DAMAGES—A notary public and the sureties on his official bond are not liable for damages for taking the acknowledgment of a person under an assumed name, such person having theretofore forged both the signatures of the owners of the property to a deed to himself under such assumed name and the acknowledgment of the notary thereto, where such person signed and acknowledged the deed in question under such assumed name as the grantor, and he actually appeared before and was introduced to the notary public as such person by another with whom the notary public was well acquainted, since, under such circumstances, the certificate of acknowledgment spoke the truth. A notary public and his bondsmen are in no sense insurers of title.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Pat. R. Parker, Judge Presiding.   Affirmed.

The facts are stated in the opinion of the court.

---

1. Proof of identity upon which officer certifying to an acknowledgment is justified in acting, note, 10 A. L. R. 871.

Goodwin & Morgrage for Appellant.

Bicksler, Smith & Parke, Walter F. Dunn and John P. Dunn for Respondents.

THOMAS, J.—This is an action against a notary public and his sureties for damages alleged to have resulted from the negligence of the notary.

The facts in regard to this case, as we get them from the record here, are as follows:

On May 26, 1916, Martin L. Kelsey and Anna B. Kelsey, his wife, were, and for many years prior thereto had been, and now are, the owners of lots 15, 16, and 17, in block 9, of Van Ness Square, in Los Angeles City, and such ownership was then shown in the proper records of Los Angeles County. Prior to said May 26, 1914, one Leonard C. Canfield conceived a felonious scheme to obtain money by forging the names of Kelsey and his wife, and the notarial certificate of their acknowledgments to a deed purporting to convey said property to a fictitious person as grantee, and placing such forged deed of record; and then, assuming the name of such fictitious grantee, to sell said property to such person as he might be able to victimize. In furtherance of this scheme said Canfield forged the names of Kelsey and his wife to a deed purporting to grant said property to a fictitious grantee designated as Helmer E. Rabild, and attached thereto a forged certificate of acknowledgment of the execution of said deed before W. B. Julian, a notary public of Los Angeles County. This forged deed was recorded in the recorder's office of Los Angeles County on May 27, 1914.

On or about June 10, 1914, said Canfield called plaintiff on the telephone and stated to plaintiff that the person speaking was Helmer E. Rabild, and offered to sell and convey said three lots to plaintiff for $4,750, subject to taxes for the current year. In the same conversation he stated that he would furnish certificates of title issued by the Title Insurance and Trust Company, showing title to said property vested in plaintiff, free from all encumbrances, except taxes and certain building restrictions. Plaintiff accepted this proposition over the telephone, and in the same conversation stated that he would instruct the Title Insurance and

Trust Company to pay $4,750 when it could issue its certificates that title to said property appeared from the records of Los Angeles County vested in plaintiff. In furtherance of said scheme Canfield prepared a deed of said property, in which the name of Helmer E. Rabild appeared as grantor and Geo. W. Brown as grantee, and prevailed upon the assistant cashier of a Monrovia bank to introduce him to defendant E. E. Rives as Helmer E. Rabild; and thereupon defendant Rives, without further evidence or knowledge that the person so introduced was in fact Helmer E. Rabild, attached to said deed a certificate signed by him as notary public of Los Angeles County, and impressed with his notarial seal, reciting that "On this twelfth day of June, 1912, before me, E. E. Rives, a notary public in and for said county, personally appeared Helmer E. Rabild, *known to me to be the person whose name is subscribed to the within instrument,* and acknowledged that he executed the same," and returned said deed, with the above certificate attached, to said Canfield. Canfield then delivered the deed to the Title Insurance and Trust Company, with instructions to record the same, and when it issued its certificates showing title to all of said property to be of record in plaintiff, subject to certain taxes, restrictions, and easements, to send its check, drawn in favor of Helmer E. Rabild, to postoffice box No. 615, Monrovia, California. The Title Insurance and Trust Company filed said deed for record with the county recorder of Los Angeles County, and it was recorded June 24, 1914. Upon the same day said Title Company issued its certificates of title that the official records of Los Angeles County showed title to each of said lots vested in George W. Brown on June 24, 1914, subject to said taxes, restrictions, and easements, and thereafter, but on the same day, issued its check in favor of Helmer E. Rabild; for $4,750, and sent the same by mail, addressed to Helmer E. Rabild, box No. 615, Monrovia, California. Said check was thereafter paid by the bank upon which it was drawn, and returned to said Title Company, indorsed "Helmer E. Ribald." Before said check was drawn by said Title Company, plaintiff had deposited with it $4,750, with instructions to pay said sum to Helmer E. Rabild when the records of the county of Los Angeles showed the title of each of said lots to be vested in George W. Brown, and it issued

its certificates of title to that effect; and the check drawn
by said Title Company and mailed to Helmer E. Rabild,
as above stated, represented the $4,750 delivered to it by
plaintiff. Neither plaintiff nor the Title Company ever saw
Canfield during the negotiations consummated by the pre-
tended sale, and all communications with him were by tele-
phone or by mail. The lots in question were of the reason-
able value of two thousand five hundred dollars each.

When satisfied that the deed recorded May 27, 1914, was
a forgery, plaintiff commenced this action to recover from
the notary, Rives, and his bondsman, $4,750; resting his
claim for damages upon the contention that the certificate
of the notary attached to the deed of June 12, 1914, was
false in fact, and its falsity the proximate cause of plain-
tiff's loss. The court found the facts to be substantially as
above stated, but concluded therefrom that the certificate
complained of was not the proximate cause of the loss,
and entered judgment dismissing the action with costs to
defendants. Plaintiff appeals from the judgment on the
judgment-roll alone.

[1] The findings in this case are very clear and specific.
Among other things, the court found as follows: ''The court
further finds . . . that at all of the times herein mentioned
there existed no such person as Helmer . E. Rabild. That
the name Helmer E. Rabild was used and designed by the
said Leonard C. Canfield to identify some fictitious person
who did not exist, but under whose assumed personality
he, the said Leonard C. Canfield, would conduct his negotia-
tions with reference to the sale and transfer of this property
to the plaintiff; and that such secret intention on the part
of the said Canfield was not known to the defendant Rives.
That Helmer E. Rabild was at all times herein mentioned
the name assumed by and used by the said Leonard C. Can-
field, and by him alone, and that at the time of the execution
of the deed to the plaintiff herein, and the acknowledgment
thereof before the defendant notary, E. E. Rives, Helmer
E. Rabild, in so far as there was any Helmer E. Rabild,
did, in the person of said Leonard C. Canfield, appear before
the said notary and acknowledge the execution of the instru-
ment as in the notarial certificate stated, and that the cer-
tificate of the said notary did truthfully so set forth the
fact that Helmer E. Rabild had executed the said instru-
ment.'' It therefore conclusively appears that the very

individual who signed and acknowledged the deed, and who was referred to therein, regardless of the name under which he had transacted business with others, did actually appear before the notary. This being true, the notarial certificate of acknowledgment spoke the truth, and was not false.

Section 1185 of our Civil Code provides: "The acknowledgment of an instrument must not be taken, unless the officer taking it knows or has satisfactory evidence, on the oath or affirmation of a credible witness, that the person making such acknowledgment is the individual who is described in and who executed the instrument; or, if executed by a corporation, that the person making such acknowledgment is the president or secretary of such corporation, or other person who executed it on its behalf." Section 1200 of the same code reads as follows: "An officer taking proof of the execution of any instrument must, in his certificate indorsed thereon or attached thereto, set forth all the matters required by law to be done or known by him, or proved before him on the proceeding, together with the names of all the witnesses examined before him, their places of residences respectively, and the substance of their testimony." Appellant contends that said certificate of acknowledgment is false, in the light of the facts in this case, based upon his understanding of the limitations imposed by our laws upon a notary public in taking and certifying to an acknowledgment of a deed to real property in this state. It will be noticed that the first section above quoted imposes upon the notary the duty of certifying that "the person making such acknowledgment is the individual *who is described in and who executed* the instrument" (italics ours); not that the person who executed the instrument *is the person whom he claims to be, or that the name given is his true name,* as manifestly contended for by appellant. This makes all the difference in the world.

In this case Rives, the notary, had never seen Canfield before. Rives, however, was well acquainted with the assistant cashier of the bank at Monrovia, who introduced Canfield to him as Rabild. The assistant cashier knew him by that name, and none other. That was the name he gave when he opened his account at that bank. This is the man, regardless of the fact that his true name was Canfield, who executed the deed, and whose execution thereof passed all the title that stood in the name of Rabild, and acknowledged

to the notary that he executed the same. Under the holding of this court in *Anderson* v. *Aronsohn,* 28 Cal. App. Dec. 216, this was sufficient basis for the statement contained in the certificate that the notary *knew* "that the person making such acknowledgment is the person who is described in and who executed the instrument." The certificate stated the absolute truth, although, according to this record, Canfield was a liar and a forger. Had "Rabild" come to this notary alone, with the deed already signed, accompanied by no one whom the notary knew, and had asked him to acknowledge the same, another question would be before us. In that case we think the "satisfactory evidence," referred to in the section, would have to be received. This latter evidence, however, was not necessary under the facts as disclosed here. We are confronted in this case with a condition, not a theory. Such being true, this court will never knowingly mulct any person for telling the truth and acting honestly.

Our attention is called to the case of *Joost* v. *Craig,* 131 Cal. 504, [82 Am. St. Rep. 374, 63 Pac. 840], as supporting appellant's position here. We do not think that case in point. In that case the certificate was, in fact, false. In this case it is true. In that case it was said: "If the deed is not genuine, but is false, the notary and his sureties ought to be held for all damages, unless they have taken the precautions expressly required by statute." That, we think, is tantamount to saying that if the deed is genuine the notary, or his sureties, ought not to be held for any damages, even though they have not taken such precautions. In the case at bar, the deed was genuine. True, it was executed by Canfield under said assumed name—Rabild. Under this assumed name, however, as before stated, he opened his bank account at Monrovia. Under this assumed name he was known to the banker. To him he was Mr. Rabild of Monrovia—the very man mentioned in the body of the deed, and, as appellant urges in his brief, who "signed the name Helmer E. Rabild in the presence of defendant Rives and requested the notary to certify his acknowledgment thereof." This deed was genuine, and the certificate of acknowledgment attached thereto was true. In such case there can be no liability on the part of the notary, under section 801 of the Political Code, or any other statute. As was said

in the case of *Anderson* v. *Aronsohn, supra:* "The case of *Joost* v. *Craig,* 131 Cal. 504, [82 Am. St. Rep. 374, 63 Pac. 840], clearly recognizes a situation in which a notary may comply with the law and yet be honestly mistaken, and injury result to innocent parties by reason of his mistake, and yet the notary not be liable." The same is true here. It is further said in the Joost case: "The certificate here gave assurance that the notary knew of his own knowledge, and not by mere hearsay, that the grantor was Charles A. Anderson of Redwood City. If this was not true, the notary should be held." The foregoing is tantamount to saying, and we think it does say, by a perfectly rational inference to be deduced therefrom, that if the certificate was true, the notary should not be held liable, regardless of whether the information upon which he based such certificate was hearsay or otherwise.

There is no doubt but that the first deed—the alleged deed from Kelsey and wife to "Helmer E. Rabild"—was a forgery. Nor is there room for argument that the second deed—the deed from "Rabild" to Brown, plaintiff here— was genuine. The only trouble with this deed was that it conveyed nothing, the grantor having nothing to convey, for reasons that are obvious. To hold that the notary and his sureties were liable, as contended for by appellant, whenever for some reason there appeared some flaw in the title to the property sought to be conveyed by such deed, or because the grantor in such instrument had no title to convey, and under such circumstances as disclosed by the record here, would be so revolutionary an act on the part of this court that it would cause business to quake to its very foundation. Such certainly cannot be the law. The notary public and his bondsmen are in no sense insurers of the title. It is true that without the certificate of acknowledgment to the purported deed from Rabild to plaintiff, the deed could not legally have been recorded; and if not recorded, it follows that the certificate of title thereafter issued could not have shown the title of record in plaintiff. But the fact that the certificate of title did not so show was not because the notary's certificate of acknowledgment was false, as we have already seen. Under these circumstances, if the said certificate of acknowledgment was true, there was no liability. And it was true.

It was urged on the argument, while conceding the legal right to transact business in that way, that no one has the right to adopt a fictitious or assumed name for the purpose of the commission of a crime. This is true. It is also true that if one does commit a crime under such fictitious or assumed name, and causes a second party to suffer damages (as was done by Canfield to plaintiff here), still that fact alone is not the basis, legal or otherwise, for the predication of an action for the recovery of such damages against a third party, who knew absolutely nothing of such fact, and who has acted honestly, and certified correctly, in so far as whatever he did had to do with the case is concerned.

In view of these conclusions we think no other point urged needs consideration.

The judgment appealed from is affirmed.

Finlayson, P. J., and Sloane, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 25, 1919, and the following opinion then rendered thereon:

THE COURT.—The application for a hearing in this court after decision by the district court of appeal of the second appellate district, division two, is denied.

[1] We base our denial solely upon the fact that it clearly appears that any negligence on the part of the notary, Rives, was not a proximate cause of the injury to plaintiff.

We deem it proper to further point out that in the case of *Anderson* v. *Aronsohn,* 28 Cal. App. Dec. 216, which is referred to in the opinion, the decision of the district court of appeal was vacated by this court and the cause ordered to a hearing herein, where it is now pending.

All the Justices concurred.

REPORTER'S NOTE: The decision of the district court of appeal in *Anderson* v. *Aronsohn,* referred to *supra,* was, on hearing in the supreme court, reversed. (See 181 Cal. 294, [184 Pac. 12].)