[Civ. No. 3657. First Appellate District, Division One.—January 13, 1921.]

## GEORGE W. BROWN, Appellant, v. TITLE INSURANCE & TRUST CO. (a Corporation), Respondent.

[1] ACKNOWLEDGMENTS—CONFLICTING DATES—VALIDITY OF DEED.—The fact that a notarial certificate of acknowledgment of a deed is dated earlier than the deed, when it is clearly shown by a reference to the deed that such date is erroneous, does not alone invalidate the certificate.

[2] ID.—ABSENCE OF DATE—PRESUMPTION.—Where no date appears in the certificate, or if it is rendered by evidence within itself so doubtful as to destroy its force, the certificate will be presumed to be made at the date of the instrument.

[3] ID.—DEFECTIVE DEED—NEGLIGENCE—LIABILITY OF TITLE COMPANY. A grantee cannot recover damages from a title insurance company for alleged negligence in taking and recording, at the instance of the grantee, a deed in which there is a discrepancy between the date of the instrument and the date recited in the certificate of acknowledgment (the latter date being one on which the grantor named therein did not have title of record), where it is apparent from the instrument itself that due to a clerical error an erroneous date was inserted in the certificate, and, even though that mistake had not existed, the deed would have been invalid and ineffective to convey title for other reasons, for which the title insurance company was not responsible.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. N. Goodwin and Goodwin & Morgrage for Appellant.

O'Melveny, Millikin & Tuller for Respondent.

SEAWELL, P. J., *pro tem.*—This is an appeal from a judgment of dismissal of the action entered after order made sustaining a demurrer to plaintiff's third amended complaint without leave to amend.

The facts are quite fully stated in the complaint.

The defendant at the times therein mentioned was a corporation duly organized and, as alleged, "engaged in the busi-

ness of examining the record titles to real property in Los Angeles County, issuing its written guarantee as to the true condition of such titles, as shown by the records in the recorder's office of said county, and holding money and papers in accordance with instructions given it by the respective parties creating such escrows.''

The action was brought against defendant Title Insurance & Trust Company to recover the sum of $4,750 as damages sustained by reason of a fraud imposed upon plaintiff by a third party in a real estate transaction by the alleged default of defendant.

The facts relied upon to maintain this action are identical with those related in *Brown* v. *Rives,* 42 Cal. App. 482, [184 Pac. 32]. There the action was brought by this plaintiff against the notary public, E. E. Rives, and his surety for damages in the sum of $4,750, alleged to have resulted from the negligence of said notary in taking the acknowledgment of a person who represented himself to be Helmer E. Rabild and the owner of the property described by the conveyance in which plaintiff Brown was named as grantee, without personal knowledge or proof of said Rabild's identity.

Judgment for defendant was affirmed on appeal on the sole ground that any negligence on the part of the notary, Rives, was not the proximate cause of plaintiff's injury. (*Brown* v. *Rives, supra.*)

By the instant action plaintiff seeks to recover from defendant a like amount as damages alleged to have resulted from the issuance to him of a false certificate as to the condition of the record title of the same lots or property described in said former action and also in having disregarded plaintiff's instructions in the payment of said sum to imposter Rabild.

The complaint sets out two causes of action. No argument is made to support the second cause of action. The view taken by the court as to the law of the case makes the second cause of action unimportant.

For many years prior to May 26, 1914, Martin L. Kelsey and Anna B. Kelsey, his wife, had been, and then were, owners of lots 15, 16, and 17, block 9, Van Ness Avenue square, city of Los Angeles, as shown by the records of Los Angeles County.

On May 26, 1914, one Leonard C. Canfield laid a general plan to defraud by forging the names of said Kelsey and wife and a notarial certificate of their acknowledgments to a deed purporting to convey their title to said three lots to a fictitious person, to wit, Rabild, and caused the same to be placed of record. Canfield, in the preparation and furtherance of his plan to cheat and defraud had, prior to the making of said forgery, assumed the name of Helmer E. Rabild, and retained said name throughout his transactions with both plaintiff and defendant.

On or about June 10, 1914, said Canfield, now Rabild, called plaintiff on the telephone and after introducing himself as Helmer E. Rabild stated that he was the owner of said three lots, actually owned by the Kelseys, and offered the same to plaintiff for the sum of $4,750. He also, in this conversation, agreed to furnish plaintiff with three certificates of title, one for each lot, to be issued by defendant Title Insurance & Trust Company free from all encumbrances except the taxes for the year 1914–15 and also certain building restrictions and easements. Plaintiff stated to Canfield, whom he accepted as Rabild, that he would place $4,750 with defendant Trust Company with instructions to pay the same to him whenever said Trust Company issued its certificate in usual form that title to said property was vested in plaintiff. Subsequent to said conversation, and on the same day, plaintiff deposited with said Trust Company said sum of $4,750, with written instructions to said Trust Company to "pay said sum to Helmer E. Rabild when it could issue its certificate of title in usual form that title to said property *appeared from the records* of Los Angeles County as vested in plaintiff." (Italics are ours.)

Plaintiff had no personal acquaintance with Canfield as Rabild or at all. They did not meet at any time pending the transaction. Neither did Canfield present himself as such or as Rabild at the Trust Company's offices, nor does it appear that he was known to any of its officers. He made no physical manifestations to either plaintiff or defendant, but employed the telephone and United States mail as exclusive methods of obtaining and imparting information necessary for the accomplishment of his purposes. On June 24, 1914, he sent to defendant Trust Company, through the mail, an instrument in the form of a deed, in which Helmer E.

Rabild was the named grantor and George W. Brown, plaintiff, was named as grantee, describing the same three lots described by the forged Kelsey deed. Defendant on the same day filed said deed for record, executed three separate written guarantees that title to said lots, as such appeared from the records of said county of Los Angeles, were on said date vested in George W. Brown, and, without further communicating with plaintiff, mailed said check or money order addressed to Helmer E. Rabild, Monrovia, Los Angeles County, which was received and appropriated by the person in whose name it was sent. The witnessing clause of the deed was in the following words and figures:

"Witness my hand this 12th day of June, 1914.
                              "HELMER E. RABILD."

The notarial certificate was in words and figures as follows:

"State of California, County of Los Angeles—ss.

"On this 12th day of June, 1912, before me, E. E. Rives, a notary public in and for said county, personally appeared Helmer E. Rabild, known to me to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same.

"Witness my hand and official seal.
" (Notarial Seal)                         E. E. RIVES,
      · "Notary Public, Los Angeles County, California."

E. E. Rives was in fact a duly appointed, qualified, and acting notary and had, so far as he knew, actually taken the acknowledgment of Rabild. In *form* the certificate of acknowledgment complies with the requirements of section 1189 of the Civil Code.

No other questions affecting title from other sources were presented in either case.

Upon the foregoing statement of facts it is argued by counsel for plaintiff that the "defective certificate of acknowledgment" showed upon its face that Rabild had appeared before the notary as grantor in said deed two years before title could have passed to him and at a time when it was incontrovertibly in the Kelseys and that this constitutes actionable negligence on the part of defendant. It is insisted that the defect above pointed out was sufficient to have put defendant, as the agent of plaintiff, upon in-

quiry, and defendant should have refused to file said deed
for record as it was not entitled to recordation.

It is apparent from an inspection of the instrument itself
that said defect was a clerical error. No fraudulent design
is charged against the notary who committed the error. The
figures intended to correctly state the day of the month
were repeated in the blank space provided for the insertion
of the current year, not an uncommon slip of the mind.

The argument made by plaintiff's counsel to the effect
that the deed was absolutely void under our code sections
and not, therefore, entitled to be placed on the public rec-
ords by reason of its defective certificate of acknowledgment
is reduced to secondary importance by the conclusion we
have reached that said defect is not the proximate cause of
plaintiff's loss.

However, reverting for the moment to the subject of
recordation of instruments, it is significant that section 1202
of the Civil Code contemplates defective certificates and pro-
vides that when "an instrument is properly made but de-
fectively certified any party interested may have an action
in the Superior Court to obtain a judgment correcting the
certificate."

[1] The fact that a notarial certificate is dated earlier
than the deed, when it is clearly shown by a reference to the
deed that such date is erroneous, does not alone invalidate
the certificate.

It has been held no error to admit a deed in evidence,
although the certificate of acknowledgment bears date prior
to the acknowledgment of the deed, if from the instrument
it appears that it was actually made at the time of its ac-
knowledgment and that the conflict in dates arises from a
mere clerical error. (*Mosier* v. *Momsen,* 13 Okl. 41, [74 Pac.
905] ; *Fisher* v. *Butcher,* 19 Ohio, 406, [53 Am. Dec. 436] ;
*In re Dahlem's Estate,* 175 Pa. St. 455, [52 Am. St. Rep.
848, 34 Atl. 807] ; 1 C. J. 828 ; 1 R. C. L. 286.)

States having statutes requiring that the true date of the
making of an acknowledgment of an instrument shall be
stated in the certificate thereof have held the rule to be that
it is sufficient if the date appears by evidence within the
instrument itself. (*In re Dahlem's Estate,* 175 Pa. St.
455, [52 Am. St. Rep. 848, 34 Atl. 807] ; *Boswell* v. *First*

*Nat. Bank,* 16 Wyo. 161, [92 Pac. 624, 93 Pac. 661]; *Kelly v. Rosenstock,* 45 Md. 389.)

If the rule recognized by other jurisdictions may be applied to the situation here presented, plaintiff's contention that the deed of June 12, 1914, was not entitled to be recorded and imparted notice to no one is not sustainable.

The notarial certificate makes direct reference to the deed dated June 12, 1914. The certificate declares that Helmer E. Rabild, known to the notary to be the person whose name was subscribed to the within instrument, personally appeared before him and acknowledged that he executed the same. The deed further contains the following provision which would have been a very significant circumstance to any one that the acknowledgment was not made prior to a time when taxes for the current year, to wit, 1914, became a lien upon the property: "Subject to the 1914 and 1915 taxes, also subject to restrictions, reservations and conditions as recorded in Book 4192, page 201 of deeds."

This was notice to the world that at least the taxes assessed against the property for the year 1914 had not been paid and the title was subject to other conditions. The instrument itself contained the evidence that the acknowledgment had not been taken prior to a time when taxes became payable. The claim that the acknowledgment was taken on the day named in the certificate being shown to be erroneous removes it from all consideration, and the presumption that it was taken on the day the deed bears date must be indulged. [2] Where no date appears in the certificate or if it is rendered by evidence within itself so doubtful as to destroy its force, the certificate will be presumed to be made, under all the authorities, at the date of the instrument.

Section 1207 of the Civil Code, which provides, upon conditions therein stated, for the validation of instruments affecting title to real property, notwithstanding any defect, omission, or informality in their execution or in the certificate of acknowledgment or the absence of any such certificate, is relied upon by plaintiff as being conclusive against any avenue of escape from liability. The closing lines of said section provide that certified copies of any instrument described in said section "may be read in evidence with like effect as copies of an instrument duly acknowledged and recorded; provided, when such copying in the proper book

of record occurred within fifteen years prior to the trial of the action it is shown first that the original instrument was genuine."

The above section is not applicable to the facts of the instant case. There are no facts in the instant case upon which the rule of evidence as stated may operate. It is not necessary, therefore, to proceed further with a discussion of this subject for reasons above stated.

[3] Plaintiff contends that the deed in question was false, inasmuch as Rabild had but mythical existence. But the truth of the matter is, plaintiff Brown by his written instructions to defendant gave to Helmer E. Rabild corporeal existence and fitted him to his newly chosen name. Defendant had no part in bringing plaintiff Brown and impostor Rabild together.

Defendant was instructed by plaintiff to deal with one Helmer E. Rabild as the owner of said lots. The identical person whom plaintiff had bargained with, using the same name given to defendant, was the person received by and dealt with by defendant. So far as this transaction is concerned, Rabild cannot be regarded as a fictitious person in his business dealing with defendant. Plaintiff was the author of his own misfortune.

The main facts to the instant case in plan and purpose are quite similar to those set out in *Bank of Savings* v. *Murfey,* 68 Cal. 455, [9 Pac. 843]. The impostor in the instant case seems to have employed the same methods that were practiced by the impostor in the former case. Defendant Murfey was a notary public. Wright LeRoy was an impostor and swindler. Leroy introduced himself to Murfey as M. B. West and requested Murfey to draw a deed from him to Henry Harmon for a lot in Oakland. Murfey prepared the deed as directed, Leroy signed the name of M. B. West and in that name acknowledged its execution. Murfey affixed his certificate to the deed in the usual form. Later Leroy presented himself at the banking-house of plaintiff, introducing himself as Henry Harmon to E. C. Sessions, its president, and stated that he desired to borrow $4,000 on the property described in the West deed. After some preliminary arrangements the examination of the title was referred to a searcher, who reported the record title in M. B. West. Later Leroy presented himself at the bank and

handed Mr. Sessions the forged deed. A note and mortgage in the agreed amount of $4,000 was prepared, the mortgage duly executed and acknowledged before one of the bank's officers, who was a notary, and the money paid to Leroy. None of the officers of the bank had ever seen Leroy until he presented himself to the bank in this transaction. An action for damages was brought against the notary Murfey for negligence in certifying Leroy to be West, the owner of the property. The court held that while the notary was negligent and careless in taking and certifying the acknowledgment to said deed without knowing or requiring proof that the person subscribing the name M. B. West to said deed was in fact West, nevertheless plaintiff's damage was not proximately caused by Murfey's negligence but the result of plaintiff's negligence in failing to inquire as to the identity of the person to whom it was making a loan and taking a note and mortgage therefor and accepting a person who was not personally known or proven to its president or some of its officers to be the person whose name was subscribed to said instrument.

The question of proximate cause as it pertinently applies to the facts of the instant case is exhaustively discussed in the Murfey case, *supra.* Plaintiff in the instant case gave defendant no instructions to take the acknowledgment of Rabild. Impliedly plaintiff made Rabild his agent to select any qualified notary he might choose. Rabild selected Rives.

Plaintiff prepared the way for the commission of the fraud perpetrated upon him by giving verity to Rabild's identity. Rives, the notary, had certified that Rabild, personally known to him to be the person whose name was subscribed to the deed, had executed the instrument. The deed from Kelsey and wife to Helmer E. Rabild was already of record.

If the notarial certificate had been faultless as to date, plaintiff, admittedly, would have received all that he had bargained for, to wit, a deed formally executed by Rabild in accordance with instructions and which would have been sufficient to have justified defendant in issuing its certificate "that title to said property *appeared from the records* of said Los Angeles County as vested in him." But such a deed would have conveyed to him nothing. A specious deed yet stood between him and actual title. Plaintiff's

only chance of circumventing an unsuspected forgery is now urged in an action against defendant as a ground for damages for the commission of an error in the consummation of a transaction that would have resulted in certain loss to plaintiff except for the intervention of said error.

To sustain the right to maintain an action for damages on a mere naked error, where no substantial benefit could possibly come to the person urging such as a basis of damage, would be repugnant to every principle of equity as well as the sound policy of the law. It is not pretended that defendant was an insurer of plaintiff's title.

If the deed in question had been genuine, in the absence of intervening rights, the only damages plaintiff could have suffered would have been the costs of maintaining an action to correct the error in the manner provided for by statute. Nothing could have been done, under the circumstances of the situation, to have made plaintiff whole. An action to correct the defect would have been an idle thing.

Plaintiff having stated his cause as broadly and as favorably to himself as the facts would permit, and it appearing that there is no theory upon which the action may be maintained against defendant, the judgment of the trial court is affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 14, 1921.

All the Justices concurred.