[S. F. No. 8581. In Bank.—September 26, 1919.]

# STEVEN ANDERSON, Appellant, v. MARTIN ARONSOHN et al., Respondents.

[1] NOTARY PUBLIC — NEGLIGENCE — CERTIFICATES OF ACKNOWLEDG-MENT—INSUFFICIENT PERSONAL KNOWLEDGE OF SUBSCRIBING PAR-TIES.—A notary public and the sureties on his official bond are liable for the negligence of the notary in stating in his certificate of acknowledgments of deeds of trust that the subscribing parties were "known" to him to be the persons described in and who exe-cuted the instruments, where such persons were impostors and the only personal knowledge he had of their identity was merely through an introduction followed by casual meetings.

[2] ID.—CERTIFICATE OF ACKNOWLEDGMENT UPON PERSONAL KNOWL-EDGE—GUARANTY OF GENUINENESS OF INSTRUMENT.—In view of the requirements of section 1185 of the Civil Code that unless the person making an acknowledgment is known to the notary to be the individual described in and who executed the instrument, his identity must be established by the oath of a credible witness, the certificate upon personal knowledge is made a guaranty of the genuineness of the instrument.

[3] ID.—PERSONAL KNOWLEDGE—DEGREE OF ACQUAINTANCESHIP.—The degree of acquaintanceship which will authorize a notary to certify that he has personal knowledge involves something more than mere casual meetings following an introduction, and must be based upon a chain of circumstances surrounding the person, tending to show he is the person he purports to be.

[4] ID.—INTRODUCTION UNDER OATH INSUFFICIENT.—Personal knowl-edge by a notary of a person making an acknowledgment is not ac-quired by his introduction under oath.

[5] ID.—WHEN NOTARY NOT LIABLE.—If a notary takes all due pre-cautions and fully complies with the statute by requiring the oath of a credible witness in a case where he has not sufficient personal knowledge of the identity of the person making the acknowledgment, he will not be held liable although he has been deceived.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Reversed.

The facts are stated in the opinion of the court.

Carl W. Mueller for Appellant.

Marshall B. Woodworth, James W. Cochrane and Edward Lande for Respondents.

McCutchen, Olney & Willard, *Amici Curiae.*

LENNON, J.—This is an appeal from a judgment in favor of the defendants in an action against a notary public and his sureties on his official bond to recover for damages alleged to have resulted from the negligence of the notary.

It appears from the findings that a few days prior to April 19, 1916, one Ambrose, a real estate agent and loan broker, through whom plaintiff had previously loaned money, called upon the plaintiff to secure a loan of nine hundred dollars upon certain real estate in the city and county of San Francisco owned by Louetta A. Pilliken, for whom Ambrose purported to act. The plaintiff having decided to make the loan, a note and deed of trust were given to Ambrose for execution by Mrs. Pilliken and her husband. Ambrose returned the document signed and acknowledged in proper form before the defendant Aronsohn, a notary public, and, upon presentation of an order purporting to be signed by the Pillikens, Ambrose received the amount of the loan in currency. At no time during the transaction did plaintiff deal with anyone save Ambrose. In May of the same year, through a similar transaction, plaintiff advanced to Ambrose the sum of seven hundred dollars upon property owned by one Mary French. Plaintiff subsequently discovered that the owners of the properties in question, the Pillikens and Mary French, had never signed the notes or deeds of trust or received the money, and that confederates of Ambrose had impersonated these parties before the defendant notary. The certificates of acknowledgment of both deeds of trust were each to the effect that the subscribing parties were "known" to the notary to be the persons whose names are subscribed to the instruments. The question presented upon this appeal is whether or not Aronsohn was legally justified in stating in the certificate of acknowledgment that the persons who appeared before him to acknowledge the instruments were known to him.

It appears that on September 8, 1915, the persons who represented themselves to be the Pillikens were introduced to

Aronsohn by Ambrose on the occasion of their assignment of an interest in a mining claim. Aronsohn acknowledged the instrument and certified to the identity of the parties under the oath of Ambrose, who was personally known to him. He made a record of this transaction in his books. We shall here quote the evidence concerning the further acquaintance of Aronsohn with these parties.

"Q. Now, did you after this transaction have occasion to meet these two Pillikens again? A. Yes. Q. Frequently or otherwise? A. Yes, five or six times. Q. And where? A. Met them the following day at the Fair, 1915, Native Sons of the Golden West Day, Admission Day, also at cafeteria, on streets, also was at my office. Q. When were they at your office? A. Shortly before April 19, 1916. Q. For what purpose? A. Mr. P. called at my office and asked me where he can get a loan on a note, and I suggested him to wait until Morris Plan Bank open business, as they were advertising loans at six per cent, etc."

It also appears that on March 2, 1915, the person who represented herself to be Mary French was introduced to Aronsohn by his former teacher, Henry Frank. He took an acknowledgment of the signature of this woman, Frank acting as identifying witness. Aronsohn also made a record of this transaction in his books. The following is the evidence of his further acquaintance with this Mary French: "Q. When did you again see Mrs. Mary French, if at all, previous to May 6, 1916? A. December 2, 1915. Q. What was the occasion of your meeting Mary French on December 2, 1915? A. She was at my office with Mr. Ambrose, who requested me to acknowledge a document. The Court: Did Mr. Ambrose request you to acknowledge a document, or Mrs. French request you to acknowledge a document? A. Mrs. French."

Basing its conclusion upon these facts, the trial court has decided that Aronsohn was legally justified in stating in the certificates of acknowledgment that the persons who appeared before him to acknowledge the instruments in question were known to him. [1] With this conclusion we are unable to agree.

[2] The statutes prescribing the duty of a notary in ascertaining the identity of an acknowledger are not uniform. In some states the notary must either "know" or have "satisfactory evidence" that the person making the acknowledgment is the individual described in the instrument. Under

such a statute some courts have held that it is sufficient if the officer's conscience is satisfied. (*Wood* v. *Bach*, 54 Barb. (N. Y.) 134, overruling *Jones* v. *Bach*, 48 Barb. (N. Y.) 568.) Other courts have held the notary to the care and diligence of a reasonably prudent man. (*Barnard* v. *Schuler*, 100 Minn. 289, [110 N. W. 966].) The California statute, however, provides that, unless the person making the acknowledgment is known to the officer to be the individual described in and who executed the instrument, his identity must be established by the oath of a credible witness. (Civ. Code, sec. 1185.) As stated by this court in *Joost* v. *Craig*, 131 Cal. 504, 509, [82 Am. St. Rep. 374, 63 Pac. 840, 842]: "This makes the certificate upon personal knowledge a guaranty of the genuineness of the instrument. . . ."

[3] The question presented for our decision relates to the degree of acquaintance which will authorize the notary to certify that he has personal knowledge. The acquaintance of Aronsohn with the confederates of Ambrose subsequent to the time of their introduction to him was not such as to furnish any rational basis for personal knowledge of their identity. Such knowledge, in our opinion, involves such an acquaintance, derived from association with the individuals in relation to other people, as establishes their identity with at least reasonable certainty. Such an acquaintance cannot in its very nature depend upon the mere word of one or two or three individuals, but must be based upon a chain of circumstances surrounding the persons in question, all of which tend to show that they are what they purport to be. That there is nothing to arouse suspicion is not enough. Something affirmative in the nature of evidence of identity must appear during the course of the acquaintanceship which would not normally appear if the persons were other than they purport to be before it can be said that their identity has become a matter of personal knowledge. That is to say, personal knowledge involves something more than the casual meetings which followed Aronsohn's original introduction to the confederates of Ambrose.

[4] The question then remains whether or not Aronsohn can be said to have acquired such personal knowledge of the parties upon their introduction under oath as to justify the making of the certificate. Such an introduction is not enough. (*Hatton* v. *Holmes*, 97 Cal. 208, 212, [31 Pac. 1131];

*Joost* v. *Craig, supra.*)   As stated by the court in *Homan* v.
*Wayer,* 9 Cal. App. 123, 126, [98 Pac. 80, 81] : "A certificate
of personal knowledge is not justified by swearing the per-
son who executed the instrument *or any other person.*"   (The
italics are ours.)   The reasons for this view are admirably
expressed in *State* v. *Meyer,* 2 Mo. App. 413, 420.   Without
perhaps indorsing all that was ,stated in the opinion, this
court quoted with approval from that decision in *Joost* v.
*Craig,* 131 Cal. 504, 509, [82 Am. St. Rep. 374, 63 Pac. 840,
842].   Speaking for the St. Louis court of appeals, Mr. Pre-
siding Justice Gantt said: "It is not easy to give a definition
of what will constitute 'personal knowledge.'   Everyone
knows that two intimate friends, who have known each other
from childhood to mature age, living in the same neighbor-
hood all that time, may, in the fullest and most unreserved
sense, be said to have such 'personal knowledge' of each
other.   But, if a stranger be introduced by a respectable per-
son into any company, it is generally safe to assume that he
is what he professes to be, although the person making the
assumption has nothing for it but his reliance on the habits
of accuracy of the introducer, who, in his turn, may be relying
on similar habits in someone else, on whose information he has
made the last introduction.   It is obvious that, when an officer
taking an acknowledgment and making a certificate assumes
any such fact, he does so at his own risk.   The law warns
him, when he has not 'personal knowledge' of his own, to
resort to certain observances which the law supposes to be suffi-
cient in practice to prevent imposition.   The very lowest of
these observances is proof by two witnesses who possess such
personal knowledge of the identity of the cognizor with the
grantor; for the statute says, cautiously, 'at least two credi-
ble witnesses.'   Hence we see that, in a case of any doubt,
it is not only permissible, but imperative, that the number
of witnesses should be increased; that, not only their number,
but their credit, must be looked to by the officer; that, as
their testimony is to be taken, they must be sworn; and that,
to secure them for future reference, their names and places
of residence must be stated in the certificate.   An officer
taking all these precautions may, of course, be still deceived,
and so be led to make a certificate that is calculated to mis-
lead.   But such a certificate is infinitely less likely to de-
ceive or mislead than a declaration that the party making

the acknowledgment is well known to the officer making the certificate. It puts all persons upon inquiry, and furnishes a clew for conducting it; and it complies with the law. If, after all, the party making the acknowledgment proves to be an impostor, the officer would, we think, if acting in good faith, stand excused. But we are of the opinion that the noncompliance with the formalities enjoined by the statute, and the assumption of any fact which afterward proves to be no fact at all, will subject the officer to all the risks attendant on the negligent performances of official duty. It may be very courteous to waive all such formalities; it may be disagreeable to speak plainly and tell a party that one is not willing to assume that he is not falsely personating another; but no one is at liberty to practice courtesy or gain popularity, to indulge his own indolence, or avoid unpleasant things at the expense of others. If these others sustain loss by his laxity, it is impossible to listen to assurances from him that he meant well and really did not know better, where it was his plain duty to probe the matter to the bottom, and not to certify at all until he knew what he was talking about. It is perfectly idle for him to protest that he did not know or suspect that his certificate was false. *That* may be granted; but it is nothing to the purpose. His business was *to know that it was true.*"

Respondents place great reliance on the statement in *Joost v. Craig, supra,* that "a notary may take all due precautions and fully comply with the statute and still be deceived. In such case he would not be held liable, but if he has not fully complied with the statute, the rule announced above [in *State v. Meyer,* 2 Mo. App. 413, 420] is not a whit too stringent." In view of the context in which this statement is found and in view of the context in the Meyer case from which it was paraphrased, it affords the respondents slight comfort. The meaning of the court is clear. **[5]** It is that if the notary takes all due precautions and fully complies with the statute *by requiring the oath of a credible witness,* he may still be deceived, and, in that event, he will not be held liable, but that if he has not complied with the statute by requiring such an oath but has, on the contrary, certified that he has personal knowledge of the identity of a person whom he knows merely through the introduction of another, it is not a whit too stringent to hold that he does so at his own risk.

The respondent contends that Ambrose was the agent of Anderson for the purpose of transacting the loans. Were this in fact the case, the negligence of Aronsohn could not, of course, be considered the proximate cause of the loss sustained by Anderson. (*Overacre* v. *Blake,* 82 Cal. 77, [22 Pac. 979].) But the trial court did not find and the evidence does not show that Ambrose did act in the matter as the agent of Anderson.

The judgment is reversed and the cause remanded for trial anew.

Wilbur, J., Shaw, J., Lawlor, J., Melvin, J., and Angellotti, C. J., concurred.

Mr. Justice Olney, deeming himself disqualified, did not participate in the foregoing decision.

Rehearing denied.

All the Justices concurred.