[Civ. No. 26372. First Dist., Div. Two. Sept. 29, 1970.]

TRANSAMERICA TITLE INSURANCE CO.,
Cross-complainant and Appellant, v.
JAMES S. GREEN et al.,
Cross-complainants and Appellants;
GERALD J. KILDAY, Cross-defendant and Respondent.

694

COUNSEL

David P. Dawson, Michael P. Carbone and Lamson, Jordan, Walsh & Lawrence for Cross-complainant and Appellant.

James S. Green in pro. per., for Cross-complainants and Appellants.

No appearance for Cross-defendant and Respondent.

OPINION

DAVID, J.* — Cross-complainant Transamerica Title Insurance Company appeals from a judgment entered on a jury verdict denying recovery against James S. Green, notary public, and his surety, General Insurance Company of America, for damages arising because of his certificate of acknowledgment of two imposters' signatures; and from an order denying its motion to strike a cost bill.

Green and General Insurance, as cross-complainants, appeal from the portion of the same judgment implicitly favoring cross-defendant Gerald J. Kilday.

In November 1963, Joseph Petrakis and his wife Mary as joint tenants owned a parcel of real property located in San Mateo. Anthony E. Von Harten and his wife Amy then as joint tenants owned a parcel of real property located partly in San Francisco and partly in San Mateo County.

On November 15, 1963, a promissory note in the principal sum of $14,993, secured by a deed of trust to both parcels of property, was executed and delivered to Northern Construction Co. (hereafter "Northern"). The deed of trust contained what purported to be the individual signatures of Joseph and Mary Petrakis and Anthony and Amy Von Harten. It also contained the signature of James S. Green, Notary Public, with his statement that on November 14, 1963, said four individuals "known to me to be the persons whose names are subscribed to the within instrument," had personally appeared and acknowledged that they had executed the document.

On November 15, 1963, Transamerica issued to Northern a policy of title insurance against loss or damage from any defect in the execution of the deed of trust, or defect in title to the interest created therein.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Neither of the women who appeared before Notary Green were in fact Mary Petrakis or Amy Von Harten; their signatures to the deed of trust were forged by imposters. Following default upon the note, Transamerica as trustee, at the request of Northern, caused the two parcels of property to be sold to Northern at a trustee's sale on October 9, 1965. In May 1966, Transamerica obtained a quitclaim deed for one parcel in favor of Northern from Mary Petrakis for $1,500.

Thereafter, Northern sued to quiet title to the two parcels, or, alternatively, to recover losses from Transamerica under the title insurance policy. The trial court quieted title to the Petrakis property in Northern, quieted title to the Von Harten property in Amy Von Harten (her husband having died), and found damages in favor of Northern against Transamerica under the title insurance policy of $9,656.21, which amount was thereafter paid by Transamerica.

Transamerica had filed a cross-complaint in said action against Green, the notary public who notarized the forged deed of trust, and against his surety, General Insurance. Transamerica alleged that Green had been negligent in notarizing said deed of trust without ascertaining the identity of the persons executing it and that Transamerica, having relied upon his notarial acknowledgment in issuing the title policy to Northern, had sustained damages including the $9,656.21 paid to Northern, $1,500 paid to Mary Petrakis for the quitclaim deed, and $2,600 attorney's fees.

Upon trial of this cross-complaint, there was a jury verdict in favor of Green and General Insurance. Transamerica now appeals from judgment entered upon said verdict.

The circumstances relative to the notarization of the acknowledgments to the deed of trust were as follows:

In November 1963, Green was an attorney and a notary public commissioned by the state. He had been an attorney since 1953, and a notary since 1957 or 1958. In 1960 he had formed a law partnership in San Mateo with Gerald J. Kilday, whom he had known since 1952, and another attorney. The partnership was dissolved in 1963, but Green and Kilday continued as associates sharing offices while maintaining their own law practices.

In early November 1963, Joseph Petrakis and Anthony Von Harten visited Kilday's office as clients to have him examine the promissory note and deed of trust at issue. They had been his clients for at least three or four months, had seen him at least 15 or 20 times, and had told him each was married, although Kilday had not met either of their wives. Kilday advised them that they and their wives would have to sign the documents and have them notarized, and told them that there was a notary in the office.

They returned to see Kilday on November 14, accompanied by two women who were introduced to Kilday as their wives. Each of the four signed the documents after Kilday examined them. Kilday then used a telephone intercom to ask Green to come into his office to notarize the documents.

Green entered Kilday's office with his notarial seal. He had never met either couple. Kilday introduced them to him as "Mr. and Mrs." Petrakis and "Mr. and Mrs." Von Harten. Each woman nodded as she was introduced, and the men shook hands. Green asked each person individually whether he or she had signed the deed of trust. After each answered affirmatively, Green executed the acknowledgment and left Kilday's office within five minutes after his arrival. Later, however, it was determined that the women were not the respective wives of the two men.

Nothing led Kilday to believe that they were not the true wives.

Four attorneys practicing in San Mateo County testified, over objections by appellant which were later overruled, that the custom and practice in San Mateo County was for a notary in a law office to accept the identification of an attorney's client if introduced by an attorney in the same office. Kilday testified that the same custom prevailed in his office, and that Green or any secretary who was a notary would rely upon an individual being a client without further identification.

The appellant's contentions that the court's instructions regarding the duties of a notary public were prejudicially erroneous must be sustained.

The trial court erred (a) by refusing to give an instruction setting forth the degree of acquaintanceship required of a notary as defined in *Anderson* v. *Aronsohn* (1919) 181 Cal. 294, 297 [184 P. 12, 10 A.L.R. 866], and by instead instructing the jury that the degree of knowledge necessary "is a question of fact," (b) by instructing the jury that violation of Civil Code, section 1185 or Government Code, section 8214, could be justified where the record contained no evidence supporting a legal justification for said violation, and (c) by admitting evidence that notaries public in San Mateo County customarily did not conform to the strict requirements of the law as to personal knowledge of the identity of the persons appearing before them to acknowledge instruments.

A notary public and his surety are liable for damages sustained from his "official misconduct or neglect." (Gov. Code, § 8214; see also Annot. (1922) 18 A.L.R. 1302, (1951) 17 A.L.R.2d 948). Under section 1185 of the Civil Code, "The acknowledgment of an instrument must not be taken, unless the officer taking it knows or has satisfactory evidence, on the oath or affirmation of a credible witness, that the person

making such acknowledgment is the individual who is described in and who executed the instrument. . . ."

These provisions of section 1185 have been interpreted to provide "that, unless the person making the acknowledgment is known to the officer to be the individual described in and who executed the instrument, his identify must be established by the oath of a credible witness." (*Anderson* v. *Aronsohn, supra,* 181 Cal. at p. 297.) ■ "The requisites of an acknowledgment (Civ. Code Sec. 1185) are the personal appearance of the maker, his acknowledgment that he signed it, and the officer's personal knowledge that the maker is the person he purports to be." (*Clements* v. *Snider* (9th Cir. 1969) 409 F.2d 549, 550.)

■ Since Green did not rely upon the oath of a credible witness to certify the acknowledgments of the four individuals who signed the deed of trust, the issue is whether the record indicates a degree of acquaintance with them sufficient to authorize Green to certify that he possessed *personal knowledge* of them. ■ The applicable test was established in the *Anderson* case: "Such knowledge, in our opinion, involves such an acquaintance, derived from association with the individuals in relation to other people, as establishes their identity with at least reasonable certainty. Such an acquaintance cannot in its very nature depend upon the mere word of one or two or three individuals, but must be based upon a chain of circumstances surrounding the persons in question, all of which tend to show that they are what they purport to be. That there is nothing to arouse suspicion is not enough. Something affirmative in the nature of evidence of identity must appear during the course of the acquaintanceship which would not normally appear if the persons were other than they purport to be before it can be said that their identity has become a matter of personal knowledge." (P. 297; see also 1 Am.Jur.2d, Acknowledgments, § 127, p. 531.)

■ In the present case, Green had never met any of the four individuals who executed the document, nor did he request any identification from them before he certified their acknowledgments. Rather, he relied exclusively upon his introduction to them by Kilday. The authorities indicate, however, that reliance solely upon an introduction by a third party does not provide a sufficient basis for the required personal knowledge.

The notary in *Anderson, supra,* relied first upon an introduction under oath by an individual "personally known to him," and second, upon an introduction by an individual acting as an identifying witness who was "his former teacher" (p. 296) and thereafter met the first signer five or six times and the second signer once before certifying the acknowledgment

of each. Our Supreme Court nevertheless reversed the judgment of the trial court, and ruled that the notary did not possess personal knowledge of the signers as required by Civil Code, section 1185.

The court's decision was summarized by an appellate court following retrial of the case: "The court then held that under such facts the notary was not authorized to certify that he had personal knowledge of the identity of the parties, as a mere introduction followed by the casual meetings narrated did not justify such a certificate. . . .

"It was there held that . . . *personal knowledge is not acquired merely through the introduction of another.*" (*Anderson* v. *Aronsohn* (1923) 63 Cal.App. 737, 740, 743 [219 P. 1017]; italics added.)

Two earlier Supreme Court cases also specifically discussed the reliance by a notary upon introductions by third parties: "It is not enough that the person be introduced to the notary by a responsible person. If that were enough there would be no purpose in requiring the oath, for such person could always furnish the introduction. This point has been often decided, although sufficiently obvious from the statute. To take an acknowledgment upon such introduction without the oath is negligence sufficient to render the notary liable in case the certificate turns out to be untrue." (*Joost* v. *Craig* (1901) 131 Cal. 504, 508 [63 P. 840].) "A notary has no right, in disregard of this plain provision of the statute [Civ. Code, § 1185], to certify that he knows a person whom he does not know, on the mere introduction of some third party; and if he does so, and loss results therefrom, he renders himself and his sureties liable to make good the loss." (*Hatton* v. *Holmes* (1893) 97 Cal. 208, 212 [31 P. 1131].)

The *Joost* case further indicated that the requirement of personal knowledge, as well as all provisions of section 1185, were to be closely followed by notaries: "If the [notarized] deed is not genuine, but is forged, the notary and his sureties ought to be held for all damages unless they have taken the precautions expressly required by the statute. The Legislature has taken great care, though, considering the importance of the matter, not too great, to make this certificate reliable." (P. 507.) "The certificate here gave assurance that the notary knew of his own knowledge, and not upon mere hearsay, that the grantor was Charles A. Anderson, of Redwood City. If this certificate was not true, the notary should be held." (Pp. 508-509.) *"When the notary does not obey this statute he should expect to be held liable.* And I wish to repeat, these requirements are of great importance to the business world, and not at all too exacting." (Pp. 509-510.) (Italics added.)

The California authorities reviewed, *supra,* indicate that an introduction

by a third party, regardless of the responsible character of the introducer, alone does not as a matter of law constitute the personal knowledge required by Civil Code, section 1185 (cf. Annot. (1921) 10 A.L.R. 871, 873; *Brown* v. *Rives* (1919) 42 Cal.App. 482, 486-488 [184 P. 32] [decided prior to *Anderson* v. *Aronsohn, supra,* 181 Cal. 294]; 1 Am.Jur.2d, *supra,* at 532).

Such strict interpretation is necessary because "[t]he purpose of the certificate of acknowledgment is to establish the identity of such person and the genuineness of the signature attached to the instrument [citations], and the certificate is *prima facie* evidence of the truth of the facts stated therein." (*Ryan* v. *Bank of Italy Nat. Trust & Sav. Assn.* (1930) 106 Cal.App. 690, 693 [289 P. 863].) "[W]hen a notary public assumes his office he is required to perform his duties with honesty, integrity, diligence and skill." (*Hungate* v. *Wells* (1933) 129 Cal.App. 133, 135 [18 P.2d 64], quoted with approval in *Lewis* v. *Agricultural Ins. Co.* (1969) 2 Cal.App.3d 285, 292 [82 Cal.Rptr. 509] (no petition filed).)

■ The breach of statutory duty is negligence per se, not overcome by the claims that Green acted reasonably in relying upon Kilday's introduction. Thus, the evidence that both were attorneys associated in law practice sharing offices, that they had known each other for many years and had been law partners before the transaction, that Mr. Petrakis and Mr. Von Harten had been clients of Kilday, had seen him often, had informed him they were married, and had introduced the women as their wives, that Kilday had introduced all four to Green, and that they had acknowledged their signatures in Kilday's office, while competent on the issue of personal knowledge, cumulatively was insufficient as a matter of law to establish performance of notarial duty.

■ Thus, by instructing "in terms of classical negligence law" that the degree of personal knowledge required by section 1185 constitutes merely "a question of fact," the trial court erred prejudicially. ■ Moreover, the record would support a determination that Green failed as a matter of law to possess the degree of personal knowledge required by Civil Code, section 1185, thus creating a presumption of negligence (Evid. Code, § 669) which was not sufficiently rebutted to permit further jury deliberation. (cf. *Alarid* v. *Vanier* (1958) 50 Cal.2d 617, 624 [327 P.2d 897]). ■ The instruction that a notary was not necessarily an insurer, however, did not constitute error since, read in context, it would have been understood to apply only when a notary had performed all required duties. (*Anderson* v. *Aronsohn, supra,* 181 Cal. at p. 299.)

■ The court erred by admitting evidence that notaries in San Mateo County customarily did not comply with the requirements of their duty

established by Civil Code, section 1185, or Government Code, section 8214. Such evidence was irrelevant and should not have been admitted. (*Hom* v. *Clark* (1963) 221 Cal.App.2d 622, 650-651 [35 Cal.Rptr. 11]; Witkin, Cal. Evidence (2nd ed. 1966) § 359, p. 318, and cases cited therein; see also *Anderson* v. *L. C. Smith Constr. Co.* (1969) 276 Cal.App.2d 436, 444 [81 Cal.Rptr. 73] (hg. den.).)

Since upon recording, the official record contains usually only the type-written signatures, there is no handwriting by which the identity of a signer can be checked. The Legislature, in requiring that the notary execute the acknowledgment only when the signatory is personally known to him, or his identity is established properly under oath of a third person (Civ. Code, § 1185) and not by hearsay, has done what it could to make the certificate reliable. When the notary does not obey the statute, he is liable. (*Fogarty* v. *Finlay* (1858) 10 Cal. 239; *Kleinpeter* v. *Castro* (1909) 11 Cal.App. 83 [103 P. 1090]; *Hatton* v. *Holmes, supra,* 97 Cal. 208; *Joost* v. *Craig, supra,* 131 Cal. 504.)

In the trial court below, it was assumed erroneously that this was an ordinary negligence case, where violation of a statute creates a presumption of negligence, which may be rebutted (Evid. Code, § 669; cf. *Alarid* v. *Vanier, supra,* 50 Cal.2d at pp. 623-624.) This doctrine is inapplicable. Government Code, section 8214, provides, "For the official misconduct or neglect of a notary public, he and the sureties on his official bond are liable to the persons injured thereby for all the damages sustained." Conduct such as that here disclosed is "official misconduct" (*Homan* v. *Wayer* (1908) 9 Cal.App. 123 [98 P. 80]) for which an injured title company may recover. (Cf. *California Pac. Title & Trust Co.* v. *MacArthur* (1934) 1 Cal.App.2d 323 [36 P.2d 413]); and for which a notary public may be removed from office or suspended (Gov. Code, § 8214.1).

The court erred in its refusal to strike jury fees from respondents' cost bill, since the fees were incurred by Kilday, as a cross-defendant, rather than by respondents.

Respondents cross-complained against Kilday. Kilday alone then demanded a jury trial. The jury was instructed to consider the action against Kilday only if Green were found liable to Transamerica, and that a verdict in favor of Green would be regarded as complete exoneration of Kilday. The jury returned a verdict in favor of respondents, after which appellant appealed. Respondents also appealed from the judgment entered in favor of Kilday and against General Insurance "for the sole purpose of keeping Kilday in the case in the event a court reversed the verdict in favor of Green and General."

Costs are allowed to a defendant in superior court "upon a judgment in his favor." (Code Civ. Proc., § 1032; see also Code Civ. Proc., § 1032.5; 3 Witkin, Cal. Procedure (1954) Judgment, § 24, p. 1903.) However, one unsuccessful defendant has been held not liable for costs incurred by a second defendant who was successful against the plaintiff, where the unsuccessful defendant neither brought the successful one into the case, nor was responsible for the plaintiff having named the successful defendant as a party (*Davis* v. *Wilde* (1961) 197 Cal.App.2d 855, 857 [17 Cal.Rptr. 925], cited with approval in *Oakes* v. *McCarthy Co.* (1968) 267 Cal.App. 2d 231, 256 [73 Cal.Rptr. 127]; *Gibson* v. *Thrifty Drug Co.* (1959) 173 Cal.App.2d 554, 556-557 [343 P.2d 610]).

Similar reasoning should prevent appellant herein, an unsuccessful plaintiff against respondents in the trial court, from being liable for jury fee costs incurred by Kilday, a successful defendant receiving judgment against respondents in the trial court, where appellant did not name Kilday as a party. Judgment in favor of Kilday against Green and General Insurance appears to have been ordered *nunc pro tunc* by the trial court, but as to them the cause has not been tried on the merits. The judgment in his favor is reversed, and the cross-complaint against him is ordered reinstated.

The judgment on the cross-complaint in favor of James S. Green and General Insurance Company of America is reversed and the court is directed to enter judgment for appellant in the sum of $11,156.21 plus interest, and reasonable attorney's fees, with costs. The order denying appellant's motion to strike jury fees claimed by respondents' cost bill against appellant is reversed, and the trial court is directed to grant the motion.

Shoemaker, P. J., and Taylor, J., concurred.

A petition for a rehearing was denied October 29, 1970.