[Civ. No. 18131. Third Dist. Dec. 27, 1979.]

BETTY E. BERND, Plaintiff and Appellant, v.
MARCH FONG EU, as Secretary, etc., Defendant and Respondent.

COUNSEL

Rowland & Parker and Jeffrey G. Olsen for Plaintiff and Appellant.

George Deukmejian, Attorney General, Robert L. Mukai and Steven A. Merksamer, Deputy Attorneys General, for Defendant and Respondent.

OPINION

JANES, J.*—Plaintiff Betty E. Bernd appeals from a judgment denying her petition for a writ of mandate seeking to set aside an administrative decision suspending her notary public commission for a period of six months. The commissioning authority, respondent Secretary of State, based its disciplinary action on plaintiff's failure to "fully and faithfully discharge" the duties required of a notary public. (Gov. Code, § 8214.1, subd. (d).) Resolution of the case depends upon statutory interpretation: whether plaintiff's negligent failure to read a certificate of acknowledgment before signing it, resulting in a false certification, constituted a failure to fully and faithfully discharge a notary's duties.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

Plaintiff's version of the facts are uncontroverted. She is an escrow officer at the Inter-County Title Company in Placerville, California, and has held a notary public commission for consecutive terms since 1952.

On October 1, 1973, plaintiff certified, in her capacity as a notary, to Frank L. Banks personally appearing before her and acknowledging his execution of a "Notice of Additional Advance Under Deed of Trust." This certificate of acknowledgment was false. Mr. Banks did not personally appear before plaintiff on such date or on any other date. In addition, plaintiff neither maintained a sequential journal of this certification nor any other personally maintained documentation of the parties to, date of, and character of the instrument acknowledged. Instead, her employer retained photographic copies of instruments she notarized in an office file containing escrow documents, to which she apparently had immediate access.

Upon learning of the false certification and failure to maintain a sequential log of official transactions, the Secretary of State, on May 4, 1977, filed an accusation against plaintiff seeking a six months' suspension of her commission. In defense, plaintiff claimed the false certification was an inadvertent mistake. Apparently she had intended to use a subscribing witness form when real estate broker Eleanor Whelden acknowledged under oath in plaintiff's presence her signing of the "Notice of Additional Advance" document as a subscribing witness. But when plaintiff's secretary failed to type the appropriate form, plaintiff erroneously signed the personal acknowledgment form instead because she did not bother to read the jurat she was signing. Arguably, the mistake was understandable because the false certification was underneath an accompanying one correctly certifying Eleanor Whelden to be a subscribing witness of Mrs. Banks' signature designated by an "X" mark. Characterization of her action as merely negligent, plaintiff contends, precluded the administrative law judge's jurisdiction to impose disciplinary action under the authority of Government Code section 8214.1 without a showing of actual knowledge of the falsity of her certification.

Plaintiff also defended herself against the Secretary of State's accusation of her failure to maintain a record of the official act as required by Government Code section 8206. She points out that section 8206, prior to its amendment in 1977, merely required the maintenance of

any type of record of the required information, not necessarily a sequential log; she asserts that the photographic copies in her employer's escrow file to which she had immediate access met this requirement.

Nonetheless, the administrative law judge found plaintiff had failed to fully and faithfully discharge the duties required of a notary public (1) because she certified the personal appearance and acknowledgment of Mr. Banks when he in fact did not appear before her and (2) because she failed to maintain a record of the transaction, in that the title company rather than plaintiff retained the "record." The judge ordered a concurrent, six-month suspension of her notary commission for the two violations.[1] The Secretary of State denied plaintiff's petition for reconsideration and adopted the administrative law judge's decision as her own.

In denying plaintiff's petition, the superior court approved the administrative decision. Implicit in the court's reasoning was an interpretation of Government Code section 8214.1, subdivision (d), which would authorize discipline of a notary for failure to fully and faithfully discharge official duties when based on negligent as well as knowing conduct. Confronting the record-keeping issue, the court justified the administrative decision because plaintiff failed to keep a sequential journal in addition to not having have her own personal record: the 1977 amendment to Government Code section 8206 specifically requiring maintenance of a log by date seemed to be "codification of what was already an administrative interpretation."

This appeal followed.

I

 Plaintiff asserts the applicability of the statute of limitations under Code of Civil Procedure section 338, subdivision 6, because the action against her was filed more than three years after the date of the alleged improper act and more than one year after the date of discovery of the act. The claim is unavailing: a statute of limitations barring a civil action brought by an aggrieved party long has been inapplicable to a disciplinary proceeding of a state administrative agency. (*Bold* v.

---

[1]Her commission was suspended for six months for making an improper certificate of acknowledgment (Gov. Code, § 8214.1, subd. (d)), and 30 days for failure to maintain a record of the Banks' transaction (Gov. Code, § 8206). The suspensions were ordered to run concurrently for a total of six months.

*Board of Medical Examiners* (1933) 133 Cal.App. 23, 25 [23 P.2d 826]; *Hartman* v. *Board of Chiropractic, etc.* (1937) 20 Cal.App.2d 76, 78 [66 P.2d 705]; see also *Cartwright* v. *Board of Chiropractic Examiners* (1976) 16 Cal.3d 762, 780 [129 Cal.Rptr. 462, 548 P.2d 1134].) There is no specific time limitation statute pertaining to the revocation or suspension of a notary's commission. (Gov. Code, § 8200 et seq.) In the absence of such a specific limitation, the administrative action by the Secretary of State is not barred by the mere passage of time. (*Rudolph* v. *Athletic Commission* (1960) 177 Cal.App.2d 1, 22 [1 Cal.Rptr. 898].)

## II

■ We reject also plaintiff's characterization of her action as a clerical error as well as her proposed interpretation of Government Code section 8214.1, subdivision (d), as requiring actual knowledge of the falsity of the certificate as a prerequisite to suspension of her commission.

The applicable section provides as follows:

"The Secretary of State may refuse to appoint any person as notary public or may revoke or suspend the commission of any notary public upon any of the following grounds:

"... . . . . . . . . . . . . .

"(d) Failure to fully and faithfully discharge any of the duties or responsibilities required of a notary public.

"... . . . . . . . . . . . ."

(Gov. Code, § 8214.1, subd. (d); formerly subd. (e), renumbered subd. (d) eff. Jan. 1, 1978 (Stats. 1977, ch. 1009, § 19).)

■ Although the ultimate interpretation of a statute is a judicial function, we must accord great respect to the views of the expert administrative body charged with enforcing a particular statute. (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]; *Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 325-326 [109 P.2d 935].) ■ Fully cognizant of plaintiff's negligence defense, the Secretary of State deter-

mined her action to be a failure to fully and faithfully perform her duties which subjected her to disciplinary sanctions under the statutory provision.

We also consider the full and faithful discharge of responsibilities to encompass due diligence in adherence to duty, as well as honesty and integrity. (See Black's Law Dict. (rev. 4th ed. 1968) pp. 719-720, definition of "faithful.") As often judicially expressed: "'[W]hen a notary public assumes his office he is required to perform his duties with honesty, integrity, diligence and skill.'" (*Transamerica Title Ins. Co.* v. *Green* (1970) 11 Cal.App.3d 693, 702 [89 Cal.Rptr. 915, 44 A.L.R. 3d 543]; quoting *Hungate* v. *Wells* (1933) 129 Cal.App. 133, 135 [18 P.2d 64].) And early in its history, our Supreme Court had occasion to hold a notary guilty of "gross and culpable negligence" for failure to "faithfully" perform official duties; the facts involved civil damages caused by the notary's failure to complete a certificate before signing it. (*Fogarty* v. *Finlay* (1858) 10 Cal. 239, 245.) The court stated emphatically: "If the notary read the certificate before signing it, this omission must have been known to him; if he did not, he is equally guilty of negligence, for an officer who affixes his official signature and seal to a document (thereby giving to it the character of evidence,) without examining it to find whether the facts certified are true, can scarcely be said to faithfully perform his duty according to law." (*Ibid.*)

Plaintiff's characterization of her error as clerical is unrealistic in light of this strong language. Her reliance on *Brown* v. *Title Ins. etc. Co.* (1921) 51 Cal.App.65 [196 P. 114], where the clerical error was an incorrect date, is inapplicable to a situation where a notary fails to read a jurat in its entirety before certifying its truth. In comparison to an erroneous date which is often harmless and "not an uncommon slip of the mind" (*id.*, at p. 69), the primary purposes of a certificate of acknowledgment are to provide prima facie evidence of the truth of the facts recited in the certificate and to establish the genuineness of the signatures attached to an instrument. (Evid. Code, § 1451; *Transamerica Title Ins. Co.* v. *Green, supra,* 11 Cal.App.3d at p. 702.) Because a notary is vested with such a singular task of verifying the authenticity of documents, we are compelled to conclude that plaintiff was grossly negligent in processing the certification when she did not bother to read its contents.

Also contrary to plaintiff's contention, *civil liability* for negligently certifying an acknowledgment is well established. Not only does Gov-

ernment Code section 8214 specifically provide for civil recovery due to "official misconduct or neglect of a notary public," but case law also has imposed civil liability for negligent action. Although *Lewis* v. *Agricultural Ins. Co.* (1969) 2 Cal.App.3d 285 [82 Cal.Rptr. 509, 44 A.L.R.3d 1233], distinguished by plaintiff, did involve a situation where the notary officer was a ". . . knowing participant in the false and fraudulent use of her signature and notarial seal" (p. 291), other cases have involved negligent false certifications. (*Fogarty* v. *Finlay, supra,* 10 Cal. 239; accord *Common Wealth Ins. Systems, Inc.* v. *Kersten* (1974) 40 Cal.App.3d 1014, 1032-1033 [115 Cal.Rptr. 653].) Actionable negligence also is clear where a notary fails to use diligence in ascertaining sufficient acquaintance with persons whose acknowledgment is being certified. (*Transamerica Title Ins. Co.* v. *Green, supra,* 11 Cal.App.3d 693; Civ. Code, § 1185.) Similarly, a notary should not be exempt from civil liability because of reliance upon a secretary to type the appropriate jurat.

Although no case is directly on point with regard to the administrative ground for disciplinary action, we deem the language quoted above from *Fogarty* v. *Finlay, supra,* 10 Cal. at page 245, controlling. Plaintiff's complete failure to read the certificate before signing it was gross negligence and consequently a failure to "faithfully" perform her notarial duty as a matter of law under Government Code section 8214.1, subdivision (d).

Incorrect and unavailing is plaintiff's attempt to draw analogies to disciplinary proceedings against attorneys. An entirely different statutory standard of conduct involving moral turpitude is applicable to attorneys. (Bus. & Prof. Code, § 6101.) Moreover, judicial interpretation of a "crime involving moral turpitude" has encompassed "gross carelessness and negligence" which constituted "a violation of the oath of an attorney to discharge faithfully the duties of an attorney to the best of his knowledge and ability." (*Sanchez* v. *State Bar* (1976) 18 Cal.3d 280, 285 [133 Cal.Rptr. 768, 555 P.2d 889], quoting *Simmons* v. *State Bar* (1970) 2 Cal.3d 719, 729 [87 Cal.Rptr. 368, 470 P.2d 352].) In *Sanchez,* there was no showing of habitual misconduct. Also, numerous statutory provisions governing the conduct of various professionals reveal negligence or gross negligence to be a permissible ground for disciplinary action. (See Bus. & Prof. Code, §§ 5100, subd. (c) regulating accountants; 5584, 5585 regulating architects; 5671 regulating landscape architects; 6775, subd. (b) regulating professional engineers; 8780, subd. (a) regulating land surveyors.)

## III

■ Plaintiff also claims error regarding the concurrent, one-month suspension of her commission for failure to keep a record of the Banks transaction. She raises the question whether former Government Code section 8206 necessitated her keeping a sequential journal or other personal record of all official acts in addition to the photographic copies of certified instruments retained by the title company but accessible to plaintiff. The former version of section 8206, applicable to this appeal, provided: "A notary public shall keep a record of all official acts done by him and a record of the parties to, date, and character of every instrument acknowledged or proved before him." (Enacted 1943; based on former Pol. Code, § 794, subds. 4-6.)

A 1977 amendment to section 8206 clarified the ambiguity in the meaning of "record" as follows: "A notary public shall keep a sequential journal of all official acts performed as a notary public. Such journal shall be in addition to and apart from any copies of notarized documents which may be in the possession of the notary public...." (Amended Stats. 1977, ch. 1009, § 11, p. 3036.)

We agree with the reasoning employed by the administrative law judge and the superior court judge in concluding that plaintiff failed to keep a record of official acts as required by former section 8206. Even though she had access to her employer's files, her reliance on them was no substitute for an obligation to personally maintain separate records. It is difficult to conceive how plaintiff could assure continued access to the records upon termination of her employment with the title company or could meet her statutory obligation to deliver her notarial records to the county clerk upon termination of her office as notary (Gov. Code, § 8209) unless she had personal control over and ownership of such records. Secondly, any reasonable interpretation of the former section would seem to require a readily accessible, separate log of official transactions by date rather than the mere retention of photographic copies of all instruments certified or proved. Although not made generally available to notaries except upon request, such was the interpretation of the Secretary of State. This informal administrative interpretation is entitled to weight, particularly when the amended section appears to be merely a clarification of the ambiguous language of the former section. (See *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d at p. 668.)

The additional concurrent one-month suspension is consistent with our interpretation of section 8206, although such interpretation will of course not affect future litigation. The record-keeping obligations of notaries now are clearly defined by amended section 8206 so that litigation should not recur regarding this issue.

The judgment is affirmed.

Regan, Acting P. J., and Warren, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.