Filed 12/19/14  Old Republic Nat. Title Co. v. Thomas CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, | |
| Plaintiff and Appellant, | G049346 |
| v. | (Super. Ct. No. 30-2012-00585122) |
| RITA P. THOMAS, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Richard W. Luesebrink, Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Law Offices of Mary Jean Pedneau, Mary Jean Pedneau, William R. Larr and Susan S. Vignale for Plaintiff and Appellant.

Rita P. Thomas, in pro. per. for Defendant and Respondent.

**INTRODUCTION**

Old Republic National Title Insurance Company appeals from a judgment in favor of Rita Thomas, a notary public. Thomas notarized trust deeds for five pieces of real estate for which Old Republic had provided title insurance. The signatures on the deeds of trust turned out to be forgeries, and Old Republic had to pay out on the title insurance policies. It sought to recover this money from Thomas, alleging she had negligently notarized the signatures. After a three-day bench trial, the court rendered judgment in Thomas' favor.

By statute, Old Republic had the burden of proof of Thomas' alleged negligence. The trial court found Old Republic failed to carry this burden, because it did not present sufficient evidence to overcome the statutory presumption Thomas had acted in accordance with provisions of law. We cannot fault its logic or reweigh the evidence, so we affirm the judgment.

**FACTS**

The basic facts are, for the most part, undisputed. Old Republic issued title insurance policies for five deeds of trust on five pieces of real estate. The deeds of trust had to be notarized, and Thomas notarized all five in November 2011. The signatures on the deeds of trust and on the notarizations were forged. The California driver's license the signer presented to Thomas as proof of identity was a fake. The forger disappeared with the proceeds of the real estate sales, and Old Republic had to pay the lending banks on the five policies. It sought to recover from Thomas for these payouts, maintaining she had not fulfilled her duty to obtain proper identification before she notarized the trust deeds.

The matter was tried to the court over three days. Old Republic argued Thomas breached her duty by accepting a fake driver's license as valid proof of identity. Old Republic's witness on this topic was a lawyer who testified about ways by which to ascertain the genuineness of a driver's license. Thomas, representing herself, called as

2

her expert Dennis Ryan, the author of a study guide for people who wish to become notaries or who are applying for recommissioning.  Ryan testified that Thomas had handled the notarization process properly, according to the standard of care for California notaries.

The court issued a statement of decision, finding that Old Republic failed to meet its burden of proof that Thomas had breached her duty in her capacity as a notary public when she notarized the signatures on the five deeds of trust.  The court found Ryan a "persuasive" witness and credited Ryan's testimony that Thomas had handled the matter as any competent California notary public would have.  It noted the failure of Old Republic's proof on this issue.  The court entered judgment in Thomas' favor.

## DISCUSSION

On appeal, Old Republic identifies two issues.  First, it argues that Thomas is, in effect, strictly liable for accepting the forger's driver's license, because the statute limits licenses eligible to be satisfactory evidence of identity to those issued by the California Department of Motor Vehicles.  The license presented to her was a fake, not issued by the DMV, so it did not qualify as satisfactory evidence.  Thomas therefore did not comply with the statute, and she should be held liable for negligence.  Second, the license itself presented two anomalies:  the expiration date and the licensee's birth date did not match, and the signature on the license did not match the signature on the trust deeds.  Either or both should have alerted Thomas that the license was a fake, and she should not have accepted it as proof of identity.

Old Republic further asserts that the standard of review is de novo, because we are interpreting the meaning of "satisfactory evidence" in a statute, a pure question of law.  The trial court went astray when it relied on Ryan's testimony regarding the standard of care for notaries public, because the standard is spelled out in the statute itself.

3

Civil Code section 1185[1] governs the duties of a notary public when recording transfers. The statute provides, in pertinent part: "(a) The acknowledgment of an instrument shall not be taken unless the officer taking it has satisfactory evidence that the person making the acknowledgment is the individual who is described in and who executed the instrument. [¶] (b) For purposes of this section, 'satisfactory evidence' means the absence of information, evidence, or other circumstances that would lead a reasonable person to believe that the person making the acknowledgment is not the individual he or she claims to be and any one of the following: [¶] . . . [¶] (3) Reasonable reliance on the presentation to the officer of any one of the following, if the document is current or has been issued within five years: [¶] (A) An identification card or driver's license issued by the Department of Motor Vehicles." (*Id.*, § 1185, subds. (a), (b)(3)(A).)[2]

"Satisfactory evidence" in this context has two components. First, there must be an *absence* of evidence for believing the person signing is an imposter (a negative component), and, second, the person must produce one of the approved identity documents – in this case a California driver's license (an affirmative component). Old Republic did not put on any evidence as to the first component. It tacitly conceded it had no evidence that anything about the imposter himself would have rung any alarm bells. Instead, it concentrated on the driver's license. Old Republic contended Thomas was negligent in accepting the fake license as proof of identity.

Section 1185 has two more subdivisions bearing on this case. They are subdivision (c): "An officer who has taken an acknowledgment pursuant to this section shall be presumed to have operated in accordance with the provisions of law." and subdivision (d): "A party who files an action for damages based on the failure of the

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

[2] The other acceptable identity document under this subdivision is a "passport issued by the Department of State of the United States." (§ 1185, subd. (b)(3)(B).)

4

officer to establish the proper identity of the person making the acknowledgment shall have the burden of proof in establishing the negligence or misconduct of the officer."[3]

A notary public can be liable for negligence for failing to follow the statutory mandates for ascertaining the identity of the signing party if the failure results in a loss to an entity entitled to rely on the authenticity of the signature. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 519-520; Evid. Code, § 669, subd. (a).) The issue before us, however, is somewhat different. It is *how* to determine whether the notary has been negligent.

Section 1185 requires that a notary have satisfactory evidence of identity. Satisfactory evidence, in turn, is of two kinds. There is the hard-and-fast evidence of identity documents – either the notary demanded to see them and entered the relevant information in the sequential journal (see Gov. Code, § 8206, subd. (a)(1)(E)), or he did not. If a notary did not call for one of the documents described in section 1185, subdivision (b)(3) or (b)(4), the notary failed to comply with the statute, if these were the bases of identification. The same would be true if the notary failed to have the person sign the notary's sequential journal or provide a thumbprint for a real estate transaction. (See Gov. Code, § 8206, subds. (a)(2)(C), (G).) Failures of these kinds that caused injury to someone relying on an authentic signature would create a presumption of negligence per se. (See Evid. Code, § 669, subd. (a).)

"Satisfactory evidence" has, another aspect, however, one not so cut-and-dried. There must be nothing to alert a "reasonable person" that the signer is not who he claims to be, and the notary may "reasonably" rely on driver's license or a passport. (See

---

[3] Notaries public are also subject to the provisions of Government Code sections 8200 et seq. For example, Government Code section 8206 mandates the keeping of a sequential journal and specifies its contents. Government Code section 8207 spells out the requirements for the use and custody of a notary's seal. The chapter also deals with their appointment, resignation, and removal from office. Government Code section 8214 provides: "For the official misconduct or neglect of a notary public, the notary public and the sureties on the notary public's official bond are liable in a civil action to the persons injured thereby for all the damages sustained."

5

§ 1185, subd. (b)(3).) How is a trier of fact to tell whether a notary has relied "reasonably"?

The statute uses the "reasonable person" standard to measure the negative component of a notary's duty to identify a signer. (§ 1185, subd. (b).) The "reasonable person" standard implies the perceptions of an ordinarily prudent person in like circumstances. (*Rowland v. Christian* (1968) 69 Cal.2d 108, 112, superseded by statute on other grounds in *Mastro v. Petrick* (2001) 93 Cal.App.4th 83, 88, fn. 1; *Warner v. Santa Catalina Island Co.* (1955) 44 Cal.2d 310, 317.) It does not imply any specialized training or duty. Whether a notary has acted as a reasonable person in concluding that nothing triggered any question about a signer's identity will usually be a question of fact, one a trier of fact can resolve without recourse to expert testimony. (*Truman v. Vargas* (1969) 275 Cal.App.2d 976, 982 [expert testimony not required for fact within general knowledge of laymen].)

This component of "satisfactory evidence" was not developed at trial. Old Republic did not claim, and presented no evidence to the effect, that any information, circumstance, or evidence would have led a reasonable person to question the signer's identity. Old Republic concentrated instead on the driver's license.

The second component of satisfactory evidence, reasonable reliance on an identity document, differs from the first. An ordinary person would seldom, if ever, have occasion to rely on or inspect driver's licenses or passports at all, let alone inspect them for evidence of forgery. An ordinary person is also not a notary, with statutorily prescribed duties and responsibilities, who must complete a course of study and pass an examination in order to be certified. (See Gov. Code, § 8201, subds. (a)(3), (4).) The

6

"reasonable person" standard is thus of no help in deciding whether a notary has behaved reasonably in accepting a license or a passport as proof of identity.[4]

In most cases, the only way a trier of fact can tell whether a notary has reasonably relied on an identity document is to learn, from an expert, how notaries generally behave, i.e., a standard of care. This standard may well differ from, for example, a doorman at a nightclub, who is presumably trained to spot fake IDs, or the TSA employee at the airport who lets passengers into a boarding area. The point is that neither a judge nor a jury as trier of fact is naturally equipped to decide whether a notary in his or her professional capacity has reasonably relied on a document that appears to be genuine. Most of the time, expert testimony will be necessary.[5] (See *Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 701-702 [if matter not within common knowledge of laymen, expert testimony necessary to establish prima facie case].)

Old Republic first argues that expert testimony is unnecessary to establish liability. In fact, it argues that the trial court erred by admitting and relying on such testimony. Thomas could not "reasonably rely" on the driver's license the forger presented to her because the statute specifies "an identification card or driver's license *issued by the Department of Motor Vehicles* (italics added)" as an identification document. The driver's license presented to Thomas was a forged one, so it was not

---

[4]    In *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992 (*Flowers*), our Supreme Court held that ordinary negligence and professional negligence are not two different theories of liability, but rather the same theory with different circumstances affecting the standard of care. (*Id.* at pp. 997-998.) A professional person must act with the ordinary care of a member of that profession; he or she does not have a heightened duty of care. (*Id.* at p. 998.)
      In this case, section 1185 explicitly states that the standard for the first, negative, component of satisfactory evidence is that of a "reasonable person," not a reasonable notary. In the absence of this specification for reasonable reliance on an identity document, the affirmative component, and given the general tenor of the legislative history (discussed below), we conclude that the standard should be the reasonable notary, i.e., the professional negligence standard, the ordinary care exercised by someone in that profession. (See *Flowers, supra,* 8 Cal.4th at p. 997 [distinction between ordinary and professional negligence relevant to statutory construction].)
[5]    Of course, if the fakery would be obvious even to an ordinary person, a plaintiff does not need an expert. (See *Flowers, supra,* 8 Cal.4th at p. 1001 ["common knowledge" exception to requirement for expert testimony].)

7

"issued by the Department of Motor Vehicles," and therefore did not meet the statutory requirement.[6] No need for an expert; the license was not issued by the DMV, and nothing else is needed.

Although not conclusive, the evidence indicated that the driver's license was, at least at some point, issued by the DMV; it was, however, issued to someone else.[7] It was not a photocopy of a driver's license, or a license issued by some agency other than the DMV, or the driver's license equivalent of Monopoly money. As discussed below, section 1185 does not make notaries the absolute guarantors of a document's genuineness. Instead, the statute allows a notary to reasonably rely on authentic-appearing identification. Old Republic did not make a prima facie case that something about the overall appearance of the license should have alerted Thomas to the forgery and that Thomas therefore violated the statute by accepting it.

Old Republic's second position is that even if reasonable reliance comes into play, Thomas was still liable, because the forgery is patent. The birth date and the expiration date did not match, and the signature on the license did not match the signature in Thomas' sequential journal. These were such obvious departures from the norm that Thomas should have seen them as indicators of forgery.

Thomas' expert testified that notaries are not equipped or trained to spot fake licenses other than the obvious ones that anyone could spot, such as a cut-and-paste job. He also explained that signatures alter over time (in this case about five years) and

---

[6]  Old Republic's driver's license witness treated the trial court to an array of gadgets, such as a bar code scanner and an ultraviolet flashlight, that could be used to determine the authenticity of a California driver's license. She did not, however, testify that notaries must or should use these devices to render their reliance "reasonable," or that notaries routinely employed them on driver's licenses.

[7]  The evidence about the fake license was quite muddled. The actual license used by the forger was obviously not available as a trial exhibit. The only evidence of the forger's license was a very poor photocopy from a loan file (not Thomas' files).

The evidence suggested the forger somehow acquired either a genuine driver's license or a photocopy of a genuine license belonging to someone with a similar name, altered the license to fit himself, and had a phony driver's license created. The owner of the license told Old Republic's witness that the actual license had never been out of his possession except when it was copied in connection with a loan application. Thomas testified that the license presented to her was a plastic card, an ordinary license like hers, not a photocopy.

8

the critical question for a notary is whether the signature on the notarized documents matches the signature in the notary's book.

The trial court found that Old Republic failed to present sufficient evidence – sufficient to overcome the presumption of compliance with the statute – that a notary should be reasonably expected to notice the discrepancy between the birth and expiration dates *and* recognize it as an indicator of forgery.[8] Old Republic also failed to present evidence on what constitutes reasonable reliance by notaries on driver's license signatures. The sufficiency of the evidence is for the trial court to determine. (*Great American Ins. Co. v. National Health Services, Inc.* (1976) 62 Cal.App.3d 785, 794.)

Old Republic relies on *Transamerica Title Ins. Co. v. Green* (1970) 11 Cal.App.3d 693 (*Transamerica*) for its contention that a violation of section 1185 is negligence per se. The code section, however, was very different in 1970, when *Transamerica* was decided, from what it is today.[9] Under the former statute, a notary public had to "personally know" the signing party (or get an oath from a credible witness). "Personally know" did not mean just seeing someone around or meeting them several times. (See *Anderson v. Aronsohn* (1919) 181 Cal. 294, 297). It was also not enough for the notary's former law partner to introduce the signers as his clients. (*Transamerica, supra,* 11 Cal.App.3d at pp. 699-702.) "The breach of statutory duty is

---

[8] Old Republic's witness referred to a handbook designed to assist notaries in checking identifications put out by the National Notary Association. This handbook is not an official California publication, and Old Republic presented no evidence regarding the breadth of its use by notaries. California notaries are examined on California law "as set forth in the booklet of the laws of California relating to notaries public distributed by the Secretary of State." (Gov. Code, § 8201, subd. (a)(4).) Thomas tried to get this booklet admitted into evidence, but the court on its own objection refused to admit it.

Old Republic's witness also testified that she checked with the DMV about driver's licenses expiring on the licensee's birthday, apparently for the purpose of testifying at trial, but once again, evidence regarding the reasonableness of requiring such an investigation of a notary was lacking.

[9] In 1970, section 1185 provided in its entirety: "The acknowledgement of an instrument must not be taken, unless the officer taking it knows or has satisfactory evidence, on the oath or affirmation of a credible witness, that the person making the acknowledgement is the individual who is described in and who executed the instrument; or, if executed by a corporation, that the person making such acknowledgement is the president or secretary of such corporation, or other person who executed it on its behalf." (Stats. 1905, ch. 445, p. 603.) The subsections defining "satisfactory evidence" and permitting reasonable reliance on a driver's license or other such documents were added in 1982.

negligence per se, not overcome by the claims that [the notary] acted reasonably in relying on [his former partner's] introduction." (*Id.* at p. 702.)

It is just this element of reasonableness that the 1982 amendments introduced into the requirement of "satisfactory evidence." The Legislature swung into action immediately after the Second Appellate District held in *Allstate Savings & Loan Assn. v. Lotito* (1981) 116 Cal.App.3d 998 (*Lotito*), that a notary could *not* rely on a driver's license or similar document as proof of identity and be in compliance with section 1185. (*Id.* at p. 1004.) The legislative history of the 1982 amendments repeatedly refers to *Lotito* as the impetus for, as the legal affairs department of the governor's office put it, "liberaliz[ing] the information a notary may rely upon in acknowledging an instrument." (Cal. Governor's Office, Enrolled Bill Rep. on Assem. Bill No. 2353 (1981-1982 Reg. Sess.) May 3, 1982, p. 1.)

When the Department of Motor Vehicles weighed in, in favor of the amendments, it observed, "As California driver's licenses and identification cards are widely accepted for identification purposes, it is appropriate to permit their use to identify persons acknowledging instruments. [¶] The benefit of this measure, with respect to facilitating the acknowledgement of instruments, should outweigh the minimal potential for risk associated with relying on paper documents as evidence of identity." (Cal. Dept. of Motor Vehicles, Enrolled Bill Rep. on Assem. Bill No. 2353 (1981-1982 Reg. Sess.) May 12, 1982, p. 1.) One of the bill's sponsors, California Escrow Association, which had collaborated with California Association of Realtors, California Bankers Association, California Land Title Association, and the California Savings and Loan League on the bill, urged then (and now) Governor Brown to sign the bill, stating "The measure contains a 'prudent person' standard which permits the notary to reasonably rely upon a submitted document, unless the document would put a notary exercising reasonable diligence on notice that the submitted document was fraudulent or altered." (Ralph F.

10

Simoni, Cal. Escrow Assn., letter to Governor Edmund G. Brown, Jr. (1981-1982 Reg. Sess.) May 6, 1982.)

Nowhere in the legislative history is there a suggestion that the new amendments would require a notary to absolutely guarantee the genuineness of an identity document, no matter how clever the forgery. Instead, "reasonableness" and "prudence" were the standards by which the notary's conduct was to be measured.

Once the issue is whether someone acted reasonably, we are nearly always in the realm of fact, and we review for substantial evidence. (See *Guido v. Koopman* (1991) 1 Cal.App.4th 837, 843; *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239; *Estate of Gump* (1991) 1 Cal.App.4th 582, 595 [whether standard of care met reviewed for substantial evidence]; *Firestone Tire & Rubber Co. v. County of Monterey* (1990) 223 Cal.App.3d 382, 390.) And Old Republic, as the entity complaining that Thomas acted negligently in ascertaining the signer's identity, had the burden of proof. (See § 1185, subd. (d).)

We should also point out that one of the risks against which persons involved in real estate transactions purchase title insurance is the risk that title documents may be forged. (*Wutzke v. Bill Reid Painting Serv.* (1984) 151 Cal.App.3d 36, 44, fn. 5; *Coast Mut. Building-Loan Assn. v. Security Title Ins. & Guarantee Co.* (1936) 14 Cal.App.2d 225, 230-231; Ins. Code, §§ 104, 12340.1.) Title insurance companies collect premiums to assume these risks (*Lagomarsino v. San Jose Abstract & Title Ins. Co.* (1960) 178 Cal.App.2d 455, 464), and the amount of the premium is, presumably, commensurate with the risk assumed. (*Southland Title Corp. v. Superior Court* (1991) 231 Cal.App.3d 530, 538.) One of the accepted methods of allocating costs between or among different insurers is apportionment based on the amount of the premiums paid to each carrier. (*Centennial Ins. Co. v. United States Fire Ins. Co.* (2001) 88 Cal.App.4th 105, 113.)

11

In this case, Old Republic charged premiums of $500 to purchase insurance in amounts between $76,000 and $85,000 for all but one of the titles.[10] By contrast, a notary may not charge more than 10 dollars to notarize a deed of trust. (Gov. Code, § 8211, subd. (a).) This is another indication that notaries are not absolute guarantors of a document's genuineness regardless of its appearance. We think the amendment's sponsor got it right: a notary can rely on a document "unless the document would put a notary exercising reasonable diligence on notice that the submitted document was fraudulent or altered."

Other than the details of the signature and the discrepancy between the birth date and the expiration date, Old Republic presented no evidence of any aspect of the license that should have put Thomas acting as a reasonable notary on notice that the license was fraudulent or altered. The court held that the existence of these two details was not enough to negate reasonable reliance. Substantial evidence supported this determination.

We emphasize what the trial court decided and what we here affirm. The court did *not* hold that Thomas acted properly when she accepted the forged license. It held that Old Republic failed to prove she had acted improperly. This was Old Republic's burden, and it did not carry its burden. Under these circumstances, the court had to find in Thomas' favor.

---

[10] For one of the policies, Old Republic charged $400 for insurance in the amount of $118,688 on a mortgage of $94,950.

## DISPOSITION

The judgment is affirmed.  Respondent is to recover her costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.

13